**Herman Price GULLATT, Jr., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–01–224–CR.**

Court of Appeals of Texas, Waco.

April 3, 2002.

Kelly R. Myers, Corsicana, for appellant.

Patrick C. Batchler, Navarro County Dist. Atty., Corsicana, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

BILL VANCE, Justice.

Herman Price Gullatt, Jr. appeals his conviction for the felony offense of driving while intoxicated. Gullatt presents a single issue for our review. We will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of June 13, 2000, Texas Department of Public Safety Troopers Patrick Brice and John V. Cabano were driving on State Highway 31 in Corsicana. As the troopers approached the intersection of Highway 31 and Seventh Street, they saw a pick-up truck, traveling in the same direction as the officers, run over the curb as it turned onto Seventh Street. Brice, who was driving the patrol car, followed the truck onto Seventh and activated his overhead lights. The driver complied and turned into a parking lot.

Brice asked the driver for his driver's license and proof of liability insurance. The driver, Gullatt, said that he did not have his driver's license but did know the license number. Brice observed that Gullatt slurred his speech and smelled of alcohol. Brice had Gullatt step out of the truck, and he asked Gullatt if he had been drinking alcohol that night. Gullatt responded that he had not. Brice also asked if he could search the truck, and Gullatt gave him permission.

While Brice was searching the truck, Cabano began to administer to Gullatt a battery of standardized-field-sobriety tests, *i.e.*, the Horizontal Gaze Nystagmus (HGN) test, the one-leg-stand test, and the walk-and-turn test. In conducting the HGN test, an officer looks for three so-called "clues" with each eye, making a total of six indicators that a person is intoxicated. *Emerson v. State*, 880 S.W.2d 759, 766 (Tex.Crim.App.1994). The clues are: "1) an inability to pursue smoothly an object, or stimulus, moving sideways across the suspect's field of vision; 2) distinct, or pronounced, nystagmus [involuntary jerking] at the eye's maximum horizontal deviation; and 3) an angle of onset of nystagmus of less than or equal to 45 degrees." *Id.* Cabano found that Gullatt exhibited all six indicators. Then Brice administered the other two tests to Gullatt, who was unable to successfully complete either of them.

In addition, Cabano asked Gullatt if he would take a "portable breath test," which enables officers to take measurements of a suspect's breath-alcohol concentration, but Gullatt declined. The officers arrested Gullatt for the offense of driving while intoxicated (DWI). TEX. PEN.CODE ANN. § 49.04(b) (Vernon Supp.2002). At the Navarro County jail, Gullatt was offered another opportunity to take a breathalyzer test, but he declined. Cabano also at-

tempted to interview Gullatt on videotape, but Gullatt chose not to answer any questions.

Gullatt was subsequently indicted for the offense of felony DWI. *Id.* § 49.09(b). He pled not guilty, but a jury convicted him. The trial court sentenced him to eleven years' confinement.

## POINT OF ERROR

Gullatt contends that the trial court erred by allowing officer Cabano to testify about Gullatt's performance on the HGN test over the objection of defense counsel.

## STANDARD OF REVIEW

The question of whether a witness offered as an expert possesses the required qualifications rests largely in the trial court's discretion. Tex.R. Evid. 702; *Wyatt v. State*, 23 S.W.3d 18, 27 (Tex. Crim.App.2000). Absent an abuse of discretion, the trial court's decision to admit or exclude testimony will not be disturbed. *Wyatt*, 23 S.W.3d at 27. The party proffering the expert witness bears the burden of showing that the witness is qualified on the specific matter in question. *Id.*

## DISCUSSION

### The Evidentiary Objection

During the guilt-innocence stage of trial, the State called Cabano to testify about his administration of the HGN test. Defense counsel made the following objection:

[Prosecutor] Q: Could you briefly, could you tell the ladies and gentlemen what nystagmus is and what it shows . . . .

[Defense counsel]: Your Honor, we object. This witness has not been qualified as an expert on what nystagmus shows. He has passed a course that shows him how to administer a test not what the test shows chemically or physically. We object to his, the question

and ask that he be restricted to answer of how he administered the test and what the indications were, not what they mean.

The trial court excused the jury. Defense counsel then took a voir dire examination of Cabano to elaborate on the objection.

Q: Okay. Now, your education background in that [HGN] testing process is designed to denote jerking or unlevel or unsolid pursuit of the eye in the following of the object; is that correct?

A: We just use involuntary jerking of the eye, sir.

. . .

Q: The involuntary jerking of the eye as pursued by the pen is something that the person cannot control; is that correct?

A: Everybody, usually most people has a slight nystagmus, alcohol just enhances the nystagmus.

Q: But alcohol enhances the nystagmus is something you were told in school; is that right?

A: I was instructed, yes, sir.

. . .

Q: You don't know the relationship of alcohol to nystagmus directly do you, other than its presence?

A: Restate your question, sir.

Q: You don't know the relationship of alcohol to the nystagmus, in other words, how much alcohol it takes to make a person's eyes jerk. You only know from your schooling that that is an indicator; is that correct?

A: I know that if a person consumes alcoholic beverage whether it be one, two, or three, it will enhance the nystagmus of the eyes.

Q: But you can't tell how intoxicated a person is by the HGN test; is that right?

A: Yes, sir, I can.

Q: And how, sir?

A: Just by my training, sir. I've been doing it for 25 years, sir.

Q: And so you can tell the difference between a .20 and a .08 or .06?

A: Just through my training, sir, I say I can.

Defense counsel urged the court to sustain his objection that would prevent Cabano from quantifying in precise numerical terms just how intoxicated Gullatt was. The court said: "This officer has been qualified to give that test. [Therefore,] I'm going to overrule your objection."

## THE CONTROLLING LAW FROM *EMERSON V. STATE*

In *Emerson v. State*, the Court of Criminal Appeals found that the HGN test is a reliable indicator of intoxication:

After consulting the literature concerning alcohol and its effects on human eye movement, and considering case law from other jurisdictions addressing the reliability of the HGN test, we conclude that the theory underlying the HGN test is sufficiently reliable pursuant to Texas Rule of Criminal Evidence 702. The scientific materials addressing the issue have reached the uniform conclusion that the consumption of alcohol has a cognizable effect on human eye movement. We believe that the accuracy of those sources cannot be reasonably questioned.

. . .

We also conclude that the technique employed in the HGN test, as designed and promoted by NHTSA, is reliable pursuant to Rule 702. ... In this jurisdiction, officers who administer the HGN test receive standardized training in its administration. When administering the HGN test, those officers must follow standardized procedures as outlined in the *DWI Detection* manual published by NHTSA. ... Therefore, we determine the technique employed in the HGN test to be a reliable *indicator of intoxication.*

*Emerson,* 880 S.W.2d at 768 (emphasis in original). But the Court also narrowed the scope of a law enforcement officer's testimony on the HGN test:

For testimony concerning a defendant's performance on the HGN test to be admissible, it must be shown that the witness testifying is qualified as an expert on the HGN test, specifically concerning its administration and technique. In the case of a police officer or other law enforcement official, this requirement will be satisfied by proof that the officer has received practitioner certification by the State of Texas to administer the HGN. A witness qualified as an expert on the administration and technique of the HGN test may testify concerning a defendant's performance on the HGN test, but may not correlate the defendant's performance on the HGN test to a precise [blood-alcohol content].

*Id.* at 769.

### APPLICATION OF *EMERSON'S* HOLDINGS

■ As noted earlier, the party proffering the expert witness bears the burden of showing that the witness is qualified on the specific matter in question. *Wyatt,* 23 S.W.3d at 27. On direct examination, Cabano testified that he was certified by the State of Texas to administer the HGN test. Thus, according to *Emerson,* Cabano is "qualified as an expert on the administration and technique of the HGN test [and] may testify concerning a defendant's performance on the HGN test, but may

not correlate the defendant's performance on the HGN test to a precise [blood-alcohol content]." *Emerson*, 880 S.W.2d at 769.

Cabano testified that, based in part on Gullatt's performance on the HGN test, it was his opinion that Gullatt was "under the influence of alcoholic beverage." Other reasons Cabano gave for his conclusion were: the smell of alcohol on Gullatt's breath; his demeanor; his failed performances on the one-leg-stand and walk-and-turn tests; and the manner in which he drove the truck. Cabano testified that Gullatt's performance on the HGN indicated that Gullatt was intoxicated, and that testimony is expressly permitted by *Emerson*. *Id.* at 768–69. Cabano made no reference to an estimate of Gullatt's blood-alcohol content (BAC) based on his performance on the HGN, nor did he attempt to correlate Gullatt's performance to a precise BAC. *But see Smith v. State*, 65 S.W.3d 332, 345 (Tex.App.-Waco Dec.5, 2001, no pet. h.) (where we found error because the officer's HGN testimony was an attempt to correlate the defendant's performance to a precise BAC). Thus, Cabano's testimony was within the parameters in *Emerson*. *Emerson*, 880 S.W.2d at 769. Accordingly, the trial court did not err by allowing Cabano to testify about Gullatt's performance on the HGN. Therefore, we overrule his sole point of error.

## CONCLUSION

Having overruled Gullatt's only point of error, we affirm the judgment.