**Kenny Michael PLOUFF, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 14–04–00268–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 30, 2006.

W. Troy McKinney, Houston, for appellants.

Jerilynn K. Yenne, Angleton, for appellees.

Panel consists of Chief Justice HEDGES, and Justices FOWLER and FROST.

## SUBSTITUTE OPINION

KEM THOMPSON FROST, Justice.

We overrule appellant's motion for rehearing. We withdraw the opinion issued in this case on October 18, 2005, and we issue this substitute opinion in its place.

Appellant Kenny Michael Plouff challenges his conviction for misdemeanor driving while intoxicated ("DWI"). He contends the trial court erred in admitting evidence of the horizontal gaze nystagmus ("HGN"), walk-and-turn, and one-leg stand tests. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a traffic stop on March 9, 2003. Officer Mask of the Texas Department of Public Safety, Highway Patrol Division stopped appellant for a defective rear taillight on the trailer that was hitched to his truck. After appellant exited his vehicle, Officer Mask asked him to produce a driver's license and proof of

insurance. Appellant had to return to his vehicle for this documentation. When Officer Mask made initial contact with appellant, he noticed that appellant's breath smelled of alcohol and appellant's eyes were bloodshot and glassy. Officer Mask asked appellant if he had been drinking that night. Appellant responded that he had been at the racetrack and had consumed two beers.

■ Officer Mask then performed several field sobriety tests on appellant. Officer Mask was certified by the State of Texas to conduct these tests and had taken additional certified training hours for conducting field sobriety tests. Officer Mask first determined whether appellant was a candidate for the HGN test by asking him if he had any recent head injuries and whether he was wearing glasses. Officer Mask then checked for equal tracking in both eyes and found appellant was a candi-

date for the HGN test. Officer Mask began the HGN test by checking for smooth pursuit in both of appellant's eyes and found that appellant did not have smooth pursuit in either eye. Appellant also exhibited distinct jerking at maximum deviation and onset of nystagmus prior to forty-five degrees. Officer Mask testified that appellant demonstrated six clue of intoxication, the maximum number, in each eye during the HGN test. Officer Mask testified that he performed all of the HGN techniques according to the National Highway Traffic Safety Administration ("NHTSA") manual for field sobriety testing.[1]

After administering the HGN test, Officer Mask asked appellant to perform the walk-and-turn test by standing with his right leg in front of his left leg and maintaining that position until he told him to do otherwise. Officer Mask told appellant

1. As explained below, appellant takes issue with the procedure and technique that Officer Mask used when administering the HGN test. In their appellate briefs, the parties rely upon the 2000 and 2002 editions of this manual. Officer Mask testified that he was trained under the 2000 edition; it appears, however, that the 2002 edition was in effect at the time of appellant's arrest and trial. No edition of the manual was introduced into evidence in the trial court, and none is included in our record. On rehearing, appellant submitted an electronic version of every NHTSA field sobriety testing manual since the late 1980s. Nonetheless, these documents were not before the trial court and are not part of our appellate record. Appellant asserts on rehearing that it is proper for this court to consider versions of this manual that were not presented to the trial court and that are not part of our appellate record. Appellant argues that the *Emerson* court made it clear that such consideration is proper. *See Emerson v. State*, 880 S.W.2d 759 (Tex.Crim.App. 1994). The *Emerson* court cited the NHTSA manual. *See id.* at 766. However, in *Emerson* a police officer indicated he followed the procedures in this manual, and the *Emerson* court does not state whether the manual it

cites is in the appellate record. *See id.* at 766–69. The *Emerson* court stated that it took judicial notice of "scientific articles" so that it could determine the reliability of the scientific theory underlying the HGN test. *See id.* at 764–65. Although one of the dissenting opinions in *Emerson* stated that the *Emerson* majority had taken judicial notice of the manual, the *Emerson* majority described the manual as a "pamphlet" rather than a "scientific article" and never stated that it took judicial notice of the manual. *See id.* at 766–69 & 776 (Baird, J., dissenting). The *Emerson* opinion does not stand for the proposition that we may review versions of the manual that are not in our record without taking judicial notice of them. Even if the *Emerson* majority had taken judicial notice of the manual, it also noted that judicial notice is discretionary. *See Emerson*, 880 S.W.2d at 765. No party in this case has asked this court to take judicial notice of any version of the manual, and we decline to do so. *See Hernandez v. State*, 116 S.W.3d 26, 30–31 (Tex.Crim.App.2003) (declining to hold "an appellate scientific seminar" and declining to take judicial notice of scientific articles and treatises that were not presented to the trial court).

that he was to take nine heel-to-toe steps in the direction of the patrol car; and on the ninth step, he was to turn around on his left foot, place his right foot back in front of his left foot, and take another nine heel-to-toe steps. During this test, appellant started too soon, stopped while walking, stepped off the line, and had to use his arms for balance. Appellant did not touch heel-to-toe; and he took the wrong number of steps.

Next, Officer Mask asked appellant to perform the one-leg stand test. Officer Mask instructed appellant to hold up his leg while counting to thirty. However, Officer Mask stopped appellant before he finished counting because he observed that appellant had put his foot down and could not keep his balance without swaying. Finally, Officer Mask asked appellant to perform the hand-clap test. Officer Mask testified that appellant could not understand the instructions.

After conducting the field sobriety tests, Officer Mask concluded that appellant was under the influence of alcohol. He asked if appellant would submit to intoxilyzer testing, but appellant declined. Officer Mask arrested him and appellant was later charged by information with unlawfully operating a motor vehicle in a public place while not having the use of his mental or physical faculties by reason of introduction of alcohol.

Appellant pled not guilty to the DWI charge. Before trial, appellant filed a motion to suppress, in which he asked the trial court to exclude evidence of the HGN, walk-and-turn, and one-leg stand tests. The trial court held a *Kelly/Daubert* hearing on the motion-to-suppress issues. *Kelly v. State,* 824 S.W.2d 568, 573 (Tex.Crim. App.1992) (stating that the appellate court

must determine whether the trial court's decision was "within the zone of reasonable disagreement" given the evidence presented at the suppression hearing and given the requirements of Rule 702). After the hearing, the trial court denied appellant's motion to suppress and allowed testimony at trial concerning all of the field sobriety tests. Appellant did not object to the admissibility of this evidence at any time during the trial.

A jury convicted appellant of driving while intoxicated and the trial court assessed punishment at 120 days' confinement, probated for 18 months, and imposed an $800.00 fine. Appellant now appeals his conviction and contends the trial court abused its discretion in admitting evidence of the field sobriety tests.

## II. Issues Presented

Appellant presents three issues for appellate review:

1. Did the trial court err in denying the motion to suppress and in admitting evidence of the HGN test and results?

2. Did the trial court err in denying the motion to suppress and in admitting evidence of the walk-and-turn test and results?

3. Did the trial court err in denying the motion to suppress and in admitting evidence of the one-leg stand test and results? [2]

## III. Standard of Review

We review the trial court's ruling on a motion to suppress under an abuse-of-discretion standard. *Long v. State,* 823 S.W.2d 259, 277 (Tex.Crim.App.1991). A

---

**2.** For simplicity and because the legal analysis is similar, we address issues two and three together.

trial court's ruling on a motion to suppress, if supported by the record, will not be overturned. *Brooks v. State*, 76 S.W.3d 426, 430 (Tex.App.-Houston [14th Dist.] 2002, no pet.). At a suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the evidence presented. *Id.* We give almost total deference to the trial court's determination of historical facts that depend on credibility and demeanor, but review *de novo* the trial court's application of the law to the facts if resolution of those ultimate questions does not turn on the evaluation of credibility and demeanor. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

When, as in this case, the trial court fails to file findings of fact, we view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings of fact are supported by the record. *State v. Ross*, 32 S.W.3d 853, 855 (Tex.Crim.App.2000). Because the trial court was free to believe any or all evidence presented and to make a determination of historical facts supported by the record after evaluating the credibility and demeanor of the witnesses at the hearing, we give the trial court's decision deference. *See Guzman*, 955 S.W.2d at 89; *Griffith v. State*, 983 S.W.2d 282, 287–88 (Tex.Crim. App.1998) (applying abuse-of-discretion standard to *Kelly* issue).

### IV. ANALYSIS

**A. Did the trial court err in denying the motion to suppress and in admitting evidence of the HGN test and results?**

In his first issue, appellant contends the trial court erred in denying his motion to suppress evidence of the HGN test and results because Officer Mask allegedly did not administer the test in accordance with the NHTSA protocol as outlined in a manual entitled "DWI Detection and Standardized Field Sobriety Testing." [3] Testimony concerning the HGN test is scientific evidence and is subject to the requirements of *Kelly*, 824 S.W.2d at 573–74. *See Emerson v. State*, 880 S.W.2d 759, 763 (Tex.Crim.App.1994).

The admissibility of scientific evidence is governed by Texas Rule of Evidence 702. This rule states that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX.R. EVID. 702. To constitute scientific knowledge that will assist the trier of fact, the proposed testimony must be relevant and reliable. *See Kelly*, 824 S.W.2d at 572. To be considered reliable, evidence based on a scientific theory must satisfy the following three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been applied properly on the occasion in question. *Id.*

Nystagmus is an involuntary rapid oscillation of the eyes in a horizontal, vertical, or rotary direction. *Emerson*, 880 S.W.2d at 765. Horizontal gaze nystagmus refers to the inability of the eyes to smoothly follow an object moving horizontally across the field of vision, particularly when the object is held at an angle of forty-five

---

**3.** Appellant states in his appellate brief at footnote 2, page 11, that the 2002 manual was in effect at the time of his arrest and trial. However, because this manual was not admitted into evidence, we do not take a position on this issue.

degrees or more to the side. *See Webster v. State*, 26 S.W.3d 717, 719 n. 1 (Tex.App.-Waco 2000, pet. ref'd). Consumption of alcohol exaggerates nystagmus to the degree it can be observed by the naked eye. *Emerson*, 880 S.W.2d at 766.

In *Emerson*, the Court of Criminal Appeals examined the underlying scientific theory of HGN testing and determined the science is valid. *Emerson*, 880 S.W.2d at 769. By making that determination, the court relieved the State of the burden of presenting scientific evidence regarding the HGN testing. *Gullatt v. State*, 74 S.W.3d 880, 883–84 (Tex.App.-Waco 2002, no pet.). The *Emerson* court also determined that the HGN testing technique in the NHTSA manual is valid. *See Emerson*, 880 S.W.2d at 768–69.

■ The HGN technique is applied properly when the officer follows the standardized procedures outlined in the DWI Detection Manual published by NHTSA. *See id.* Officer Mask testified that he complied with procedure and looked for the clues of intoxication, which he found in appellant. Slight variations in the administration of the HGN test do not render the evidence inadmissible or unreliable, but may affect the weight to be given the testimony. *Compton v. State*, 120 S.W.3d 375, 378 (Tex.App.-Texarkana 2003, pet. ref'd).

Appellant contends the State did not meet the third requirement of *Kelly* because it did not prove the test was administered properly on the occasion in question.[4] Appellant contends that Officer Mask did not properly administer the HGN test because he allegedly did not follow the NHTSA manual. During the suppression hearing, appellant introduced

the testimony of Officer Troy Walden as an expert in HGN testing and procedure. Officer Walden testified that Officer Mask performed the HGN test in a non-standardized manner. In relying on this testimony, appellant asserts the following:

*(1) Phase One: Checking for Equal Tracking and Equal Pupil Size:* Officer Mask failed to satisfy the first phase of the test which is to check for equal tracking and equal pupil size. Appellant contends that although Officer Mask moved the stimulus across his face, he took approximately four seconds to complete this procedure on the left eye and six seconds to complete the procedure on the right eye, rather than the two seconds that Officer Walden suggested it should take.

*(2) Phase Two: Lack of Smooth Pursuit:* Officer Mask failed to satisfy the second phase of the test, which involves looking for the lack of smooth pursuit. Officer Walden testified that in this phase, one pass on one eye should take approximately four seconds, while one pass on both eyes should take approximately eight seconds; and there must be two passes across each eye, thus four passes would take approximately sixteen seconds to complete. Appellant contends that Officer Mask moved the stimulus at a quicker pace and did not check each eye a second time.

*(3) Phase Three: Distinct Nystagmus at Maximum Deviation.* Officer Mask failed to satisfy the third phase of the test, which involves looking for distinct nystagmus at maximum deviation. Officer Walden

---

4. Officer Mask was trained according to the standards in the NHTSA manual, was certified to perform the HGN test, and relied on that training and manual in administering the HGN test to appellant. Appellant has not challenged Officer Mask's qualifications.

testified that that the proper administration of this phase requires moving the stimulus to maximum deviation on each eye and then holding it at maximum deviation for at least four seconds; and the procedure must be performed on each eye twice. Appellant contends that Officer Mask held the stimulus at maximum deviation for only one second when he administered the test and he did not repeat the procedure a second time.

(4) *Phase Four: Onset of Nystagmus Prior to 45 Degrees:* Officer Mask failed to satisfy the fourth phase of the test, which involves looking for the onset of nystagmus prior to 45 degree movement of the eye. Appellant contends that although there were no problems with the mechanics of Officer Mask's administration of the onset passes, he failed to repeat the process a second time in each eye.

■ Officer Mask did not admit to these alleged facts at the suppression hearing;[5] rather, he specifically testified that he administered the HGN test in accordance with his training and the NHTSA manual's procedures. Although Officer Walden did testify as to the above facts, his testimony is based solely on his review of the video-

tape which was also admitted into evidence. The quality of this videotape is poor, with bad lighting, and much of the HGN test is obscured by Officer Mask's body. Moreover, the trial court easily could have found that any variations made by Officer Mask were slight and therefore, did not affect admissibility of the evidence. *Compare McRae v. State,* 152 S.W.3d 739, 743 (Tex.App.-Houston [1st Dist.] 2004, pet ref'd.) (holding that where the undisputed testimony establishes that the arresting officer did not administer the HGN technique properly to appellant and officer admitted to making several other misstatements concerning the HGN test, it was more than a "slight" deviation); *and Smothers v. State,* No. 2–03–056–CR, 2004 WL 1597652, at *2 (Tex.App.-Fort Worth Jul.15, 2004, no pet.) (stating that based upon the officer's *admission* that he did not administer the test properly, it is clear that the HGN test results did not meet the *Emerson* requirements for admissibility) (not designated for publication) *with Compton,* 120 S.W.3d at 378 (holding that slight deviation from manual in number of seconds taken to administer HGN test did not invalidate test); *Quinney v. State,* 99 S.W.3d 853, 858 (Tex.App.-Houston [14th Dist.] 2003, no pet.) (holding that the HGN test was administered properly and evidence was admissible).[6] In addressing de-

---

**5.** Appellant makes several references to trial testimony throughout his appellate brief; however, we are confined to the evidence that was admitted at the time the trial court made its ruling on the motion to suppress. *See Rachal v. State,* 917 S.W.2d 799, 809 (Tex. Crim.App.1996). Appellant contends, on rehearing, that all of the testimony from trial regarding the deficiencies in the HGN test are evident on the videotape, which was in evidence at the suppression hearing. We do not agree with appellant that the errors asserted by appellant in regard to the administration of the HGN test are visible or obvious on the videotape. The videotape is of poor quality

and much of the test is obscured by Officer Mask's body.

**6.** In his motion for rehearing, appellant cites *Ford v. State,* 158 S.W.3d 488 (Tex.Crim.App. 2005) in support of his assertion that Officer Mask's conclusory testimony was not sufficient to show compliance with the required standards by clear and convincing evidence. The *Ford* case does not deal with the admissibility of HGN test results. *See Ford,* 158 S.W.3d at 493. Furthermore, we do not agree with appellant's contention that Officer Mask's statements are conclusory. In addition, at the motion-to-suppress hearing, the judge was free to believe any or all evidence

viations in the administration of tests, the *Compton* court opined:

> The manual itself only provides approximations of the time required for properly conducting the tests; however, Compton reasons that the slightly increased speed with which Officer Baggett administered the test amounted to an inappropriate application of the technique, invalidating the results. *This conclusion is untenable and, if accepted, would effectively negate the usefulness of the tests entirely. Any variation in timing would require courts to exclude the results as unreliable.*

120 S.W.3d at 378 (emphasis added). Appellant asserts that *Compton* does not apply to this case and is contrary to *Emerson*, which directly controls the disposition of this case. Appellant's disagreement with the holding in *Compton* does not make it inapplicable to the facts of this case, nor does it make *Compton* contrary to the Court of Criminal Appeals's decision in *Emerson*. We agree that *Emerson* is a controlling case regarding the admissibility of HGN test results. *See Emerson*, 880 S.W.2d at 764–69. However, we disagree with appellant that *Compton* is contrary to *Emerson*. In *Compton*, the Texarkana Court of Appeals properly applied all the requirements and factors in *Emerson* and

simply concluded that a police officer's slight deviation in the number of seconds taken to conduct the HGN test from the number of seconds recommended by the DWI Detection Manual did not invalidate test results otherwise indicating that defendant was driving while intoxicated. *Compton*, 120 S.W.3d at 378. Despite appellant's contentions, this opinion does not conflict with the holdings in *Emerson*. The *Emerson* court stated that officers administering the HGN test must follow the standardized NHTSA procedures and concluded that the officer in *Emerson* had followed the HGN technique prescribed by the NHTSA. *See Emerson*, 880 S.W.2d at 768–69. The *Emerson* court did not address how courts should handle situations in which the officer follows the NHTSA technique and procedure for HGN testing but deviates slightly from the approximate times set forth by the NHTSA. *See Compton*, 120 S.W.3d at 378. Therefore, *Compton* does not conflict with *Emerson*. We agree with the conclusion in *Compton* that it would be unreasonable to conclude that any variation in administering the tests, no matter how slight, could automatically undermine the admissibility of an individual's performance of the tests. 120 S.W.3d at 738.[7]

Presuming, without deciding, that Officer Walden qualified as an expert in this

---

presented and to make a determination of historical facts supported by the record after evaluating the credibility and demeanor of the witnesses at the hearing, including both Officer Mask and appellant's expert, Officer Walden.

**7.** Appellant also makes several arguments that *Compton* does not apply to this case because the facts are not the same. Although the deviations in the administration of the HGN test might not be the same in this case as in *Compton*, we conclude Officer Mask's deviations, if any, like those found in *Compton*, could have been found by the trier of fact to be slight. For example, appellant contends, among other things, that Officer Mask

failed to satisfy the first phase of the test which is to check for equal tracking and equal pupil size. Appellant contends that although Officer Mask moved the stimulus across his face, he took approximately four seconds to complete this procedure on the left eye and six seconds to complete the procedure on the right eye rather than the two seconds that Officer Walden suggested this procedure should take. We conclude that the difference of two seconds should not render the test results inadmissible. *See Compton*, 120 S.W.3d at 379. The same analysis applies to appellant's other complaints regarding other parts of this test.

case, we hold that the trial court was free to believe any or all evidence presented and to make a determination of the facts supported by the record after evaluating the credibility and demeanor of the witnesses at the hearing and that the trial court did not abuse its discretion in denying appellant's motion to suppress this evidence. *See State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Because all three criteria of *Kelly* were satisfied, Officer Mask's testimony concerning the results of the HGN test was admissible.

 In any event, we conclude that even if the trial court had abused its discretion in admitting evidence of the HGN test results, appellant was not harmed. Error in the admission of evidence constitutes nonconstitutional error. *See* TEX. R.APP. P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App.1998). A reviewing court is to disregard a nonconstitutional error that does not affect the substantial rights of the defendant. TEX. R.APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997).

 If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, that is, as having a substantial and injurious effect or influence in determining the jury's verdict. *Webb v. State,* 36 S.W.3d 164, 182–83 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). The defendant is not required to prove harm from an error. *Johnson v. State,* 43 S.W.3d 1, 4 (Tex.Crim.App.2001). It is the duty of the reviewing court to assess harm from the context of the error. *Id.*

Thus, the proper inquiry is whether the trial court's error, if any, in allowing Officer Mask to testify about the HGN test results substantially swayed or influenced the jury's verdict. *See Johnson,* 43 S.W.3d at 4. In making this determination, we consider the trial court's admission of the HGN testimony in the context of the entire record and not just whether there was sufficient or overwhelming evidence of the defendant's guilt. *Motilla v. State,* 78 S.W.3d 352, 355–56 (Tex.Crim.App.2002).

When Officer Mask made initial contact with appellant, he noticed that appellant's breath smelled of alcohol and appellant's eyes were bloodshot and glassy. Officer Mask asked appellant if he had been drinking that night. Appellant responded that he had been at the racetrack and had consumed two beers. Officer Mask then performed several field sobriety tests on appellant.

After administering the HGN test, Officer Mask asked appellant to perform the walk-and-turn test by standing with his right leg in front of his left leg and maintaining that position until he told him to do otherwise. Officer Mask told appellant that he was to take nine heel-to-toe steps in the direction of the patrol car; and on the ninth step, he was to turn around on his left foot, place his right foot back in front of his left foot, and take another nine heel-to-toe steps. During this test, appellant started too soon, stopped while walking, stepped off the line, and had to use his arms for balance. Appellant did not touch heel-to-toe; and he took the wrong number of steps.

Next, Officer Mask asked appellant to perform the one-leg stand test. Officer Mask instructed appellant to hold up his leg while counting to thirty. However, Officer Mask stopped appellant before he finished counting because he observed that appellant had put his foot down and could not keep his balance without swaying. Finally, Officer Mask asked appellant to perform the hand-clap test. Officer Mask

testified that appellant could not understand the instructions.

After conducting the field sobriety tests, Officer Mask concluded that appellant was under the influence of alcohol. He asked if appellant would submit to intoxilyzer testing, but appellant declined. We conclude that, in the context of all the evidence against appellant, the trial court's error, if any, in admitting the testimony regarding the HGN test and results did not affect appellant's substantial rights and did not have a substantial or injurious effect on the jury's verdict. The HGN test was only one of four tests performed in the field, all of which appellant failed. *See King*, 953 S.W.2d at 271; *see also Hunt v. State*, No. 14–00–01318–CR, 2002 WL 121967, at *2 (Tex.App.-Houston [14th Dist.] Jan. 31, 2002) (not designated for publication) (presuming admission of testimony about the HGN test was error and holding that it did not affect Hunt's substantial rights and was "harmless in light of other properly admitted testimony"). Accordingly, we overrule appellant's first issue.

**B. Did the trial court err in denying the motion to suppress and in admitting evidence of the walk-and-turn and one-leg stand tests and results?**

██ In his second and third issues, appellant contends the trial court erred by admitting evidence of the walk-and-turn and one-leg stand tests under Texas Rule of Evidence 702 because Officer Mask allegedly performed these tests improperly. Appellant contends that, under *United States v. Horn*, 185 F.Supp.2d 530 (D.Md. 2002), testimony concerning the one-leg stand and walk-and-turn tests are admissible only if they meet the *Kelly* criteria for expert testimony. *See Kelly*, 824 S.W.2d at 573. We disagree with appellant's position.

The *Horn* court held that testimony concerning the one-leg stand test could constitute either lay witness testimony or expert testimony, depending on how it was used at trial. *See McRae*, 152 S.W.3d at 745 (citing *Horn*, 185 F.Supp.2d at 556). Acknowledging that the probative value of the one-leg stand test derives from the basic nature of observing human behavior, the *Horn* court concluded that testimony about this test was lay witness testimony if the officer testified only about her observations of a defendant's "appearance, coordination, mood, ability to follow instructions, balance, the presence of the smell of an alcoholic beverage[,] . . . and the observations of the defendant's performance of the standardized field sobriety tests. . . ." *See id.*

██ Texas Rules of Evidence 701 and 702 allow both lay and expert witnesses to offer opinion testimony concerning intoxication. *See Emerson*, 880 S.W.2d at 763. Texas, like Maryland, allows peace officers to testify as lay witnesses about their observations of a suspect's performance on the one-leg stand test. *See id.* at 764. Texas courts have held that, because an officer's testimony about a suspect's coordination, balance, and any mental agility problems exhibited during the one-leg stand and walk-and-turn tests are observations grounded in common knowledge, the officer's testimony based on these observations is considered lay witness opinion testimony under Rule 701, and not expert testimony under Rule 702. *Compare* Tex.R. Evid. 701 *with* Tex.R. Evid. 702; *see also Emerson*, 880 S.W.2d at 763 (explaining that peace officer need not qualify as expert to express opinion whether person he observed was intoxicated). The one-leg stand and walk-and-turn tests are grounded in the common knowledge that excessive alcohol consumption can cause problems with coordination, balance, and

mental agility, and the sole purpose of these tests is to reveal clues or symptoms of impairment. *See Smith v. State,* 65 S.W.3d 332, 347 (Tex.App.-Waco 2001, no pet.).

We agree with our sister court in *McRae* and conclude that the testimony by the arresting officer concerning the one-leg stand and walk-and-turn tests is lay witness testimony governed by Rule 701. *See McRae,* 152 S.W.3d at 745. At the suppression hearing, Officer Mask stated that, during the one-leg stand test, a suspect is supposed to place one foot six inches above the ground, whichever foot the suspect chooses, while the suspect stands with hands down by his side, and counts from 1001 to 1030 or until he is told to stop. Officer Mask testified that he looks at four clues during the one-leg stand test-swaying, using arms for balance, dropping a foot, and hopping. He stated that, during the one-leg stand test, appellant put his foot down and swayed while balancing.

Officer Walden testified that Officer Mask failed to instruct appellant to keep his legs straight, to point his toe on his elevated foot, or to count properly. He also testified that the important factor in the test according to the NHTSA manual, is that the subject hold the foot off the ground for a total of thirty seconds, not when the subject counts to thirty seconds, and therefore because the test was administered improperly, the results of the test were inadmissible.

During appellant's performance of the one-leg stand test, Officer Mask observed appellant drop his foot, use his arms for balance, sway, and fail to follow instructions. Officer Mask concluded that appellant was intoxicated because he could not follow directions. Appellant has not referred this court to any Texas authority, and we are aware of none, holding that,

when an officer uses terms like "standardized clues," "test," or "divided attention," the officer is no longer testifying as a lay witness and begins to testify as an expert, who therefore must be qualified. *See Horn,* 185 F.Supp.2d at 555–56. We hold that Officer Mask's testimony, as described above, concerning his observations of appellant's performance on the one-leg stand test was admissible under Rule 701.

As for the walk-and-turn test, we conclude that Officer Mask's testimony concerning his observations of appellant's performance on this test was also admissible under Rule 701. The walk-and-turn test, like the one-leg stand test, is grounded in the common knowledge that excessive alcohol consumption can cause problems with coordination, balance, and mental agility. *See Smith,* 65 S.W.3d at 347. Officer Mask testified that after giving appellant instructions for the walk-and-turn test, appellant started too soon, stopped while walking, stepped off the line, used his arms to balance, did not touch heel-to-toe, and took the wrong number of steps. The trial court was free to believe any or all evidence presented and to make a determination of the facts after evaluating the credibility and demeanor of the witnesses at the hearing. We hold that the trial court did not abuse its discretion in denying the motion to suppress this evidence. *See State v. Ballard,* 987 S.W.2d 889, 891 (Tex.Crim.App.1999). Accordingly, we overrule appellant's second and third issues.

Having overruled all of appellant's issues, we affirm the trial court's judgment.