Affirmed and Memorandum Opinion filed June 2, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00267-CR

___________________

 

Randy Scott Hall, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the County Court at Law #3 and Probate Court

Brazoria County,
Texas



Trial Court Cause No. 175571

 



 

 

MEMORANDUM OPINION

A jury found appellant Randy Scott Hall guilty of the
misdemeanor offense of driving while intoxicated (“DWI”), and the trial judge
sentenced him to 120 days imprisonment in the Brazoria County Jail.  On appeal,
Hall contends (1) the trial court erred in allowing a state trooper to testify
as to the results of a horizontal-gaze-nystagmus test conducted on Hall, and
(2) the evidence is legally insufficient to support his conviction.  We affirm.


I

            Officer Brandy
Gandy of the Surfside Beach Police Department was on patrol on July 30, 2009,
when she received a report from dispatch that a suspicious person was
approaching residents’ homes and allegedly trying to gain entry.  While stopped
at an intersection, Officer Gandy noticed a white Pontiac matching the description
of the vehicle the suspicious person was reportedly driving.  Officer Gandy
followed the white Pontiac until it turned in to a private residence.  Officer
Gandy testified she knew the owners of the residence lived in Houston and were
not at the residence at the time.  Roughly five to ten minutes later, Officer
Gandy returned to the house to find the white Pontiac still parked in the
driveway and Hall seated at a picnic table.  The picnic table was underneath
the house, which was built on stilts as it was near the Gulf.    

            Hall told Officer
Gandy he did not know who owned the home but that he just needed a place to sit
down.  Officer Gandy testified she smelled alcohol on Hall and that Hall
admitted he had been drinking.  When Hall became frustrated with Officer
Gandy’s questioning, she handcuffed him and placed him in the back of her
patrol unit.  Department of Public Safety State Trooper Clinton Cole arrived on
the scene as Officer Gandy was moving to handcuff Hall.  Trooper Cole testified
Hall displayed an aggressive and combative stance toward Officer Gandy, and
that he stopped out of concern for Officer Gandy’s safety.  Trooper Cole
testified that Hall smelled of alcohol, had bloodshot and glassy eyes, and
slurred speech.  

            After Hall was
removed from Officer Gandy’s patrol unit, Trooper Cole asked Hall if he would
agree to take field-sobriety tests.  Trooper Cole first attempted to administer
the horizontal-gaze-nystagmus (“HGN”) test, in which Hall was asked to follow
with his eyes the movements of a pen held by Trooper Cole.  When asked if he
had ever received any head injuries, Hall said he had been “beat up a lot,” and
when asked if he had previously been diagnosed with nystagmus, Hall said he did
not know what the word meant and that he had only a third-grade education.  He
further warned Trooper Cole he might not be able to pass sobriety tests because
he was “crippled” due to back and elbow problems and a previously broken
ankle.  

Throughout the exchange, Hall appeared unable or
unwilling to follow Trooper Cole’s instructions in taking the HGN test. 
Trooper Cole repeatedly restarted the test, admonishing Hall to watch the pen. 
At several points Hall broke off the test, saying he was “worried about that
hand,” in reference to Trooper Cole’s right hand, which was resting on his belt
while he administered the HGN test with his left hand.  Hall claimed to be
worried because “you guys beat me up a lot, man.”  Trooper Cole, who wore his
gun on the left side of his body, repeatedly assured Hall there was nothing on
his belt where his right hand was resting and that he would not hurt Hall
unless Hall became violent.  Hall then professed to be a “paranoid
schizophrenic.”  Outside the presence of the jury, Trooper Cole testified Hall
“never was cooperative” during the HGN test and tried to “stare me down about
90 percent of the time.”  Nevertheless, Trooper Cole testified that he found
all six clues for intoxication the HGN test is designed to detect over the
course of the roughly two minutes he administered the test.     

            Trooper Cole then
attempted to have Hall perform a walk-and-turn test.  Hall seemed confused by
the instructions of the test, first being unclear as to which car Trooper Cole
was asking him to walk toward, and then asking if he could walk toward a post
instead.  When he attempted to start the test, Hall immediately lost his
balance when he put one foot in front of the other.  He then asked if he could
take off his boots for the test, and also asked if they could move to perform
the test on concrete.  Trooper Cole complied with both requests.  Hall then
uttered a racial slur as he became increasingly uncooperative in taking the
walk-and-turn test.   

Trooper Cole then asked Hall to perform the
one-leg-stand test.  Hall refused, telling Trooper Cole “[y]ou’re gonna arrest
me no matter if I can do this or not.”  Hall subsequently refused to provide a
breath sample and was arrested.  An inventory search of Hall’s car produced six
empty Bud Light “tall boy” beer cans located on the front passenger-side
floorboard along with mail addressed to Hall.       

II

We first address Hall’s
second issue, in which he argues the evidence was legally insufficient to
support his conviction.  In a legal-sufficiency review, we examine all of the
evidence in the light most favorable to the verdict to determine whether a
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319
(1979).  We evaluate all of the evidence in the record, both direct and
circumstantial, whether admissible or inadmissible.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  Although we consider everything
presented at trial, we do not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the fact finder.  Williams
v. State, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  The jury is the
exclusive judge of the credibility of witnesses and of the weight to be given
their testimony, and it is the exclusive province of the jury to reconcile
conflicts in the evidence.  Mosley v. State, 983 S.W.2d 249, 254 (Tex.
Crim. App. 1998).    

Hall argues there was no
evidence from Hall’s driving indicating he had lost his mental or physical
faculties, noting Officer Gandy’s testimony that Hall broke no traffic laws and
made a successful turn into the residence where he was ultimately arrested. 
Hall further argues that Trooper Cole’s testimony concerning the results of the
HGN test amount to no evidence because the test was improperly administered. 
Hall also contends that his performance on the walk-and-turn test can be
explained by his claimed disability and because he is “at least fifty pounds
overweight.”  Hall also maintains the evidence is legally insufficient because
Hall was not asked to perform field-sobriety testing until roughly thirty
minutes after parking at the residence.  Accordingly, Hall contends the only
evidence weighing against Hall is (1) two officers’ testimony that he smelled
of alcohol and displayed signs of intoxication such as bloodshot and glassy
eyes; (2) Hall’s own admission that he had been drinking; (3) Trooper Cole’s
testimony that Hall lost his balance while performing the walk-and-turn test,
which is also reflected in video taken from the dash cam in Trooper Cole’s
patrol unit; (4) Hall’s refusal to perform the one-leg-stand test and to
provide a breath sample; and (5) Hall’s general behavior toward the officers,
which he contends “show[s] nothing more than a dislike of law enforcement and
offers no evidence toward [Hall’s] intoxication.”

The evidence Hall admits
weighs against him, however, is sufficient for a rational jury to find him
guilty of DWI beyond a reasonable doubt.  Two officers testified that Hall
displayed signs of intoxication, and Trooper Cole directly testified that he
believed Hall was intoxicated, while Officer Gandy testified Hall admitted he
had been drinking.  This testimony in itself is sufficient to support a DWI
conviction.  See Whisenant v. State, 557 S.W.2d 102, 105 (Tex. Crim.
App. 1977).  Furthermore, the refusal to participate in field-sobriety testing
and to submit a breath sample tends to show consciousness of guilt and is
relevant evidence for the jury to consider.  See Tex. Transp. Code §
724.061; Bartlett v. State, 270 S.W.3d 147, 153 n.20 (Tex. Crim. App.
2008) (defendant’s refusal to submit to a breath test relevant to show
consciousness of guilt).  The jury also considered Trooper Cole’s testimony
that he found all six clues for intoxication through the HGN test, which we
consider in our analysis even if Trooper Cole’s testimony was inadmissible.  See
Dewberry, 4 S.W.3d at 740 (inadmissible and admissible evidence considered
in legal-sufficiency analysis).  And the jury saw video of Hall’s performance
on these tests, which included Hall losing his balance as he attempted to begin
the walk-and-turn test, as well as his overall behavior and demeanor toward the
officers throughout the encounter.  In viewing the video, the jury was in a
position to determine for itself whether Hall displayed signs of intoxication
that can be visually discerned.  See Cotton v. State, 686 S.W.2d 140,
143 n.3 ((Tex. Crim. App. 1985) (noting that evidence of intoxication includes
slurred speech, unsteady balance, and a staggered gait).  The jury was also free
to assign weight to the six empty “tall boy” beer cans found in Hall’s car.  

Of course the jury was likewise
free to consider that Hall drove safely to the residence where he was arrested
and that his claimed disabilities and overweight condition might have affected
his ability to perform field-sobriety tests, and reconcile this evidence with
other evidence tending to show his intoxication.  We do not substitute our
judgment for the jury’s determination of the weight and credibility of this
evidence.  See Williams, 235 S.W.3d at 750.  Even if we disregarded the
evidence Hall contends should not have been admitted or which constituted no
evidence at all, there was sufficient evidence for a rational jury to find him
guilty beyond a reasonable doubt.  See Jackson, 443 U.S. at 319.  

III

            Hall
also argues the trial court erred in allowing Trooper Cole to testify
concerning the results of the HGN test because the test was not administered
according to the protocol for field-sobriety testing outlined by the National
Highway Transportation Safety Administration (“NHTSA”).  At trial, Trooper Cole
testified he was able to detect all six clues for intoxication discernable
through the HGN test despite Hall’s uncooperative behavior.  Hall argues
Trooper Cole should have been allowed to testify only that Hall refused to
perform the HGN test rather than state his conclusions from a test that was
never fully administered.  We review a trial court’s admission of evidence for
an abuse of discretion.  McDonald v. State, 179 S.W.3d 571, 576 (Tex. Crim.
App. 2005).  A trial court abuses its discretion when its decision is “so
clearly wrong as to lie outside that zone within which reasonable persons might
disagree.”  Id.

            Nystagmus
is an involuntary rapid oscillation of the eyes in a horizontal, vertical, or
rotary direction.  Emerson v. State, 880 S.W.2d 759, 765 (Tex. Crim.
App. 1994).  Horizontal-gaze nystagmus refers to the inability of the eyes to
smoothly follow an object moving horizontally across the field of vision,
particularly when the object is held at an angle of forty-five degrees or more
to the side.  See Webster v. State, 26 S.W.3d 717, 719 n.1 (Tex.
App.—Waco 2000, pet ref’d).  Consumption of alcohol exaggerates nystagmus to
the degree that it can be observed with the naked eye.  Emerson, 880
S.W.2d at 766.     

In Emerson, the
Court of Criminal Appeals examined the underlying scientific theory of HGN
testing and determined the science is valid.  880 S.W.2d at 769.  In doing so,
the court relieved the State of the burden of presenting scientific evidence regarding
HGN testing to satisfy the proof-of-reliability requirement imposed by Kelly
v. State.  See 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).  Although
the Emerson court held that the HGN technique is applied properly when
the officer follows the standardized procedures outlined in the DWI Detection
Manual published by NHTSA, we have previously recognized that slight variations
in administering the test do not necessarily undermine the admissibility of an
individual’s performance on the test.  Plouff v. State, 192 S.W.3d 213,
221 (Tex. App.—Houston [14th Dist.] 2006, no pet.); see also Compton v.
State, 120 S.W.3d 375, 378 (Tex. App.—Texarkana 2003, pet. ref’d).  

Trooper Cole
administered the HGN test over the course of roughly two minutes.  In the
video, Trooper Cole’s body blocks Hall from view, but Trooper Cole can be seen
repeatedly restarting the test and admonishing Hall to watch the pen.  During
the two minutes, Hall repeatedly stops performing the test and expresses
concerns about what Trooper Cole is doing with his right hand.  Hall seemed to cooperate
with Trooper Cole during two intervals of roughly fifteen and forty seconds. 
On voir dire and outside the presence of the jury, Trooper Cole
testified he “did get [Hall] to follow the pen a couple of times.”  When
defense counsel asked Trooper Cole if it would be more accurate to say Hall
refused to cooperate, Trooper Cole insisted he was able to discern all six
clues for intoxication.

Even if the trial court
abused its discretion in admitting evidence of the HGN test results, we
conclude Hall was not harmed.  Error in the admission of evidence constitutes
nonconstitutional error.  See Tex. R. App. P. 44.2(b); Johnson v.
State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  A reviewing court is to
disregard a nonconstitutional error that does not affect the substantial rights
of the defendant.  Tex. R. App. P. 44.2(b).  A substantial right is affected
when the error had a substantial and injurious effect or influence in
determining the jury’s verdict.  King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).  In making this determination, we consider the trial
court’s admission of Trooper Cole’s testimony on the results of the HGN test in
the context of the entire record.  See Motilla v. State 78 S.W.3d 352,
355–56 (Tex. Crim. App. 2002).  

Two officers testified
that Hall smelled of alcohol, and Officer Gandy testified Hall admitted he had
been drinking.  Trooper Cole further testified that Hall’s eyes were bloodshot
and glassy, and that he believed Hall was intoxicated.  After Hall was
arrested, six empty “tall boy” beer cans were found in his car.  If Hall is
correct that at the most Trooper Cole should have been allowed to testify only
that Hall refused to cooperate with the HGN test, the jury would have then
considered that Hall failed to cooperate with not one but two field-sobriety
tests (the HGN and walk-and-turn tests), and outright refused two more
(one-leg-stand test and breath sample).  When Hall briefly attempted the
walk-and-turn test, he immediately lost his balance after putting one foot in
front of the other and before taking even a single step.  Furthermore, a nearly
eight-minute-long video demonstrates Hall’s inability to understand and follow
instructions as well as his general behavior toward the officers, from which
the jury could have deduced that Hall was intoxicated.  In light of this
evidence, we conclude any error from allowing Trooper Cole to testify
concerning the HGN test results was harmless.  We overrule Hall’s first issue. 
 See King, 953 S.W.2d at 271.

* * *

For the foregoing
reasons, we affirm the trial court’s judgment.         

                                                                                    

                                                                        /s/        Jeffrey
V. Brown

                                                                                    Justice

 

 

 

Panel consists of Justices
Brown, Boyce, and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).