

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00252-CR

THE STATE OF TEXAS, APPELLANT

V.

DANIEL CABRAL-TAPIA, APPELLEE

On Appeal from the County Court
Hale County, Texas
Trial Court No. 2017C-200, Honorable Bill A. Coleman, Presiding

March 28, 2019

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

This is an appeal from an order granting the motion of Daniel Cabral-Tapia (Cabral) to suppress the results of the horizontal gaze nystagmus (HGN) test administered upon him by a Texas trooper. The trooper stopped Cabral after witnessing him commit miscellaneous traffic violations on I-27 in Hale County. That stop eventually led to the administration of the HGN test once the trooper smelled alcohol on Cabral. The trial court convened an evidentiary hearing on Cabral's motion, received testimony from the trooper who made the stop, admitted several exhibits, and ultimately decided to grant the motion.

Its reasons for doing so were described in its findings of fact and conclusions of law. In sum, the trial court concluded that "[t]e State failed to prove by clear and convincing evidence that [the trooper] followed the test procedures as outlined in the NHTSA Manual and pre-screening in the manner as mandated by NHTSA and *Emerson*. *Emerson*, 880 S.W.2d at 768, 773; *see also Mata v.State*, 46 S. W.3d 902, 908 (Tex. Crim. App. 2001)."

Before us, the State contends that the trial court 1) "erred by holding that *Emerson v. State*, 880 S.W.2d 759 (Tex. Crim. App. 1994) requires that an officer conduct a horizontal gaze nystagmus test in **strict compliance** with the NHTSA manuals procedures" and 2) "[i]n doing so, [it] did not consider any subsequent case law that holds slight variances between the NHTSA manual and the HGN test in question" acceptable. (Emphasis added). We affirm.

*Standard of Review*

We review the decision to suppress evidence under the standard of abused discretion. *State v. Cortez*, 543 S.W.3d 198, 203 (Tex. Crim. App. 2018). That standard obligates us to sustain the decision if it is correct under any applicable theory of law and reverse it only if it is arbitrary, unreasonable, or "'outside the zone of reasonable disagreement.'" *Id.* So too does it generally require us to defer to the findings of fact issued by the trial court and supported by the record and consider de novo its application of the law to those findings.

Next, if we must sustain the ruling on any applicable legal theory supporting it, then, logically, the State has the burden to establish that no applicable legal theory does. *State v. Fernandez*, __ S.W.3d __, __, 2018 Tex. App. LEXIS 10925, at *1-2 (Tex. App.—Amarillo 2018, no pet.); *see also John v. State*, No. 02-17-00372-CR, 2018 Tex. App.

LEXIS 5533, at *4 (Tex. App.—Fort Worth July 19, 2018, no pet.) (mem. op., not designated for publication) (holding that because the applicable standard of review in a probation revocation appeal is abuse of discretion, "we cannot hold that a trial court's . . . decisions constitute an abuse of discretion when an appellant does not challenge all grounds on which the trial court based those decisions).  In other words, the reasons provided by the trial court in its findings and conclusions do not restrict our obligation to affirm on any ground, including those unmentioned by the trial court.  *Alford v. State*, 400 S.W.3d 924, 929 (Tex. Crim. App. 2013); *State v. Fernandez*, 2018 Tex. App. LEXIS 10925, at *4 n.1.  So, an appellant's burden to establish error is not restricted to merely nullifying the grounds alluded to by the trial court as justifying its decision.  It must show that no legitimate grounds support it.

*Application of Standard*

Testimony regarding HGN is scientific evidence, and its admissibility is governed by Rule of Evidence 702.   *See Emerson*, 880 S.W.2d at 763 (Tex. Crim. App.1994); *Plouff v. State*, 192 S.W.3d 213, 218 (Tex. App—Houston [14th Dist.] 2006, no pet.); *Ellis v. State,* 86 S.W.3d 759, 760 (Tex. App.—Waco 2002, pet. ref'd).  For scientific evidence to be admissible, the proponent must show that 1) it is based on a valid scientific theory, 2) the technique by which the theory was applied is valid; and 3) the technique was followed.  *Emerson*, 880 S.W.2d at 764; *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).  No one at bar questions that the HGN test is based on a valid scientific theory.  What is at issue concerns the accepted technique by which the theory is to be applied and whether it was followed.

As said in *Emerson*, "the technique employed in the HGN test, as designed and promoted by NHTSA [i.e., National Highway Traffic Safety Administration], is reliable pursuant to Rule 702." *Emerson*, 880 S.W.2d at 768. Thus, the officials administering the HGN test must follow the standardized procedures specified in the NHTSA manual. *Winstead v. State*, No. 11-13-00053-CR, 2014 Tex. App. LEXIS 10211, at *12 (Tex. App.—Eastland Sept. 11, 2014, no pet.) (mem. op., not designated for publication); *Plouff*, 192 S.W.3d at 219 (stating that the technique is applied properly when the officer follows the standardized procedures outlined in the manual); *see Emerson*, 880 S.W.2d at 769 (determining that "pursuant to the third prong of the *Kelly* analysis . . . the HGN technique was applied properly on the occasion in question. After examining the record in this case, we conclude that the HGN technique, as prescribed by the United States Department of Transportation and the State of Texas, was followed by Officer Trevino in his examination of appellant"). This does not mean strict compliance with each aspect of the manual is required. Slight variations in the manner that the test was administered may occur without rendering the test results inadmissible. *Gomez v. State*, No. 01-17-00245-CR, 2018 Tex. App. LEXIS 5380, at *7 (Tex. App.—Houston [1st Dist.] July 17, 2018, no pet.) (mem. op., not designated for publication); *Winstead*, 2014 Tex. App. LEXIS 10211, at *12; *Plouff*, 192 S.W.3d at 219. So, to render the test results admissible, the proponent of the evidence must show that the official followed the procedures specified in the manual without more than slight deviation.

As previously mentioned, the trial court concluded that the State failed to prove the trooper who tested Cabral "followed the test procedures as outlined in the NHTSA Manual and pre-screening in the manner as mandated by NHTSA." It arrived at this conclusion

after making various factual findings which included 1) "[t]he [S]tate presented no evidence that the manner in which [the] Trooper . . . conducted HGN was in accordance with his training," and 2) the trooper "indicated that he was trained with a manual, but he no longer has his training manual on SFSTs."

We see from the record before us that the trooper testified to being trained to administer the HGN test under a NHTSA manual. Yet, the document by which he was trained was not the current NHTSA manual but rather a superceded one. Moreover, it was neither available nor admitted into evidence at the hearing. Nor did the trooper testify about what that old manual required of him when performing an HGN test. So, while he did describe various steps taken when testing Cabral, whether those steps comported with *any* of the procedures specified in the manual under which he was trained is unknown.

Whether his training under the old manual comported with any of the procedures iterated in the new manual is similarly unknown. It too was not admitted into evidence. Nor did anyone testify as to its contents or standardized procedures.

Again, the officials administering the HGN test must follow the standardized procedures specified in the NHTSA manual to render their test results competent evidence. What those procedures were when the trooper at bar was trained or when he encountered Cabral and whether he abided by them is a matter of conjecture. Also, a matter of conjecture is the question of whether the testing techniques itemized in the old manual were techniques deemed acceptable under the new one. The State's argument here did not address these circumstances. Rather, it focused on whether the trooper's testing only slightly deviated from the prescribed testing techniques. Without the trial

court being told of what those prescribed techniques were, it could hardly determine if the trooper's conduct deviated from them only slightly.

In sum, the case before us is not one involving proof of slight variation from standardized procedures. It is one involving compliance in any respect, that is, whether he followed any of the techniques he was trained to follow under the NHTSA manual. If *X* is the standard, then one must know what *X* is before concluding that the acts undertaken comported with *X*. Accordingly, the State failed to establish that the trial court's decision to suppress the results of the HGN test at bar evinced an instance of abused discretion.

We overrule the State's issue and affirm the trial court's order.


Brian Quinn
Chief Justice


Publish.