Opinion issued July 31, 2008 








 










In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00444-CR

____________


STEPHONIE THERESA KIRBY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the County Criminal Court at Law No. 7

Harris County, Texas

Trial Court Cause No. 1408228






MEMORANDUM OPINION

 A jury found appellant, Stephonie Theresa Kirby, guilty of the offense of
driving while intoxicated ("DWI"). (1) The trial court, pursuant to an agreed
punishment recommendation from the State, assessed appellant's punishment at
confinement for 180 days, suspended the sentence, placed appellant on community
supervision for one year, and imposed a fine of $500. In one point of error, appellant
contends that the trial court erred in admitting into evidence the results of a field
sobriety test administered by a deputy sheriff who was not certified to administer the
test and who improperly administered the test.

 We affirm.

Factual and Procedural Background

 Michael Fatheree testified that, on October 7, 2006 at approximately 1:00 a.m.,
while driving his car home from work, he saw a car swerving in the lane in front of
his car. Because the car pulled into a left-hand turn lane, Fatheree proceeded to
accelerate his car straight in his lane. However, as Fatheree accelerated, the other car
pulled back into Fatheree's lane, and Fatheree's car collided with the rear of the other
car. 

 After the collision, Fatheree and appellant, who was the driver of the other car,
pulled over onto the median, and appellant angrily cursed at Fatheree. Fatheree told
appellant to "calm down" and return to her car, which she did. Fatheree explained
that her behavior was "a little sporadic, a little loud, [and] uncontrolled," but he did
not smell alcohol on her breath because "he didn't get that close" to her. 
Approximately six minutes later, appellant came back from her car, and, after a
conversation with Fatheree, appellant decided to call for emergency assistance. 

 After police officers arrived at the scene, Fatheree saw Harris County Sheriff's
Office Deputy J. Griffin administer to appellant a walk-and-turn field sobriety test (2)
and noticed that appellant stumbled and swayed. Also, when Griffin administered a
one-leg-stand field sobriety test, (3) he saw appellant sway, but not fall over. Fatheree
further observed that, after the collision, appellant did not wear any shoes until a
police officer told her to put on her shoes. Although Fatheree did not believe that
appellant had lost the use of her mental faculties, he did believe that appellant had
lost the use of her physical faculties due to her loss of balance. Thus, Fatheree opined
that appellant was intoxicated.

 Harris County Sheriff's Office Sergeant K. Allee testified that he came upon
the scene of the collision. He observed appellant and concluded that she was
intoxicated because he smelled a moderate-to-strong odor of alcohol on her breath
and noticed that she had glassy eyes, stood slightly imbalanced, and exhibited slurred
speech. On cross-examination, Allee conceded that he did not ask appellant how
many drinks she had consumed. 

 After appellant's trial counsel moved "to limine out" Deputy Griffin's
testimony because he was "not certified in the administration of any field sobriety
tests," the trial court conducted a hearing outside of the jury's presence. In this
hearing, Griffin testified that standardized field sobriety tests were not developed
until the 1990s and that the police academy did not incorporate training on such
standardized field sobriety tests until 2005. However, Griffin explained that,
although he was not "a practitioner of standardized field sobriety tests," he was "very
familiar with the standardized field sobriety tests" through years of experience and
training. 

 Deputy Griffin further testified that, in 1978, he started his fourteen years of
service as a police officer for the United States Air Force, where he had contact with
intoxicated people "on a number of times" and received training on how to conduct
field sobriety tests such as the walk-and-turn test. In 1993, he came to the Harris
County Sheriff's Office and received his state practitioner certification through the
Texas Commission on Law Enforcement Officer Standards and Education
("TCLEOSE"). Although he could not describe his specific training when he came
to the Harris County Sheriff's Office, he did remember that he had received training
in administering basic field sobriety tests. In 2005, he subsequently attended a Field
Training Officer program, where he had to administer, and was critiqued, on two
DWI arrests in which he used standardized field sobriety tests. 

 Deputy Griffin explained that, when administering the walk-and-turn test to
appellant, he instructed her to walk in a straight line, to start with her left foot planted,
to place her arms to her side, to look down, to take nine steps forward in heel-to-toe
fashion by first putting her right foot in front of her left foot, to turn around in a series
of small steps, and to take nine steps back. Griffin asked appellant if she understood
the instructions, demonstrated the test for her, and told her not to start until so
instructed. Because there was not a line on the ground, Griffin had appellant use an
"imaginary line." Griffin also explained that he looked for a total of eight "clues." 
In his offense report, Griffin noted that, during appellant's performance of the walk-and-turn test, she stepped off of the imaginary line four times. 

 On cross-examination, Deputy Griffin conceded that he was not certified on
administering standardized field sobriety tests. Griffin also conceded that he did not
remember at what point appellant stepped off of the imaginary line four times and that
he did not specify how many times appellant missed her heel-to-toe steps. It was also
shown that Griffin only knew five of the eight clues that he was supposed to look for
under the National Highway Traffic Safety Administration (4) ("NHTSA") guidelines
in administering the walk-and-turn test. However, Griffin explained that the
NHTSA's standardized form of clues was not used "on the street," he had not "seen
anybody fill it out," and, when administering the test, it was not as if he was reading
a "textbook" to a suspect. 

 At the conclusion of the hearing, the trial court allowed into evidence Griffin's
testimony as to the walk-and-turn test, but not as to the one-leg-stand test because he
did not demonstrate and have appellant perform the one-leg-stand test according to
the NHTSA guidelines.

 In front of the jury, Deputy Griffin testified that, on the night of the collision,
he had smelled alcohol on appellant's breath, noticed that she swayed when on her
feet, saw that she had glassy eyes, and heard her slurring her words. Because he
suspected that appellant was impaired, Griffin administered to her the walk-and-turn
test. He explained to the jury that, although the walk-and-turn test was a
"standardized" test, which he was not certified to administer, he could properly
administer the test based on his "training and experience." Griffin further explained
that he told appellant that she had to walk in a straight line, start with her left foot
planted, look down, take nine steps forward in heel-to-toe fashion, turn around in a
series of steps, and take nine steps back. He also conducted a quick demonstration
of the proper heel-to-toe steps for appellant and then had her conduct the test with "an
imaginary line." As appellant performed the test, Griffin observed that appellant
stepped off of the imaginary line four times. 

 When asked what he would have done if appellant had "passed" the walk-and-turn test, Deputy Griffin explained that he would have told appellant "to have a good
night." However, after administering the test, Griffin concluded that a "possibility"
existed that appellant was intoxicated. He then arrested appellant and took her to a
police station, where appellant refused to take a breathalyzer test and to perform the
walk-and-turn test again. Griffin observed appellant sway while on her feet at the
police station. 

 On cross-examination, Deputy Griffin conceded that he did not ask appellant
how many drinks she had consumed. Moreover, Mark Guthrie, appellant's boyfriend,
who was present at the scene of the collision, testified that, in his opinion, appellant
was not intoxicated.

Standard of Review

 We review a trial court's decision to admit or exclude evidence under an abuse
of discretion standard. Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App.
1996). Therefore, we will not reverse a trial court's ruling on whether to admit or
exclude evidence as long as its admission was within the "zone of reasonable
disagreement." Id. at 102. 

Walk-and-Turn Test

 In her sole point of error, appellant argues that the trial court erred in admitting
into evidence Deputy Griffin's testimony about appellant's performance on the walk-and-turn test because he was not certified to administer the walk-and-turn test and he
improperly administered the test according to the NHTSA guidelines. (5) 

 We note that "Texas courts have not yet drawn a definite line between lay
versus expert testimony where [field sobriety] test[s] [are] involved." Taylor v. State,
No. 03-03-00624-CR, 2006 WL 1649037, at *12 (Tex. App.--Austin June 16, 2006,
pet. ref'd) (mem. op., not designated for publication); compare Plouff v. State, 192
S.W.3d 213, 223-24 (Tex. App.--Houston [14th Dist.] 2006, no pet.) (concluding
that testimony regarding one-leg-stand and walk-and-turn tests is lay witness
testimony), with McRae v. State, 152 S.W.3d 739, 747 (Tex. App.--Houston [1st
Dist.] 2004, pet. ref'd) ("assum[ing,] without deciding," that certain references made
by police officer on one-leg-stand test can be considered expert testimony). 
Nevertheless, Texas Rule of Evidence 702 expressly provides that if "specialized
knowledge will assist the trier of fact to understand the evidence or to determine a
fact in issue, a witness qualified as an expert by knowledge, skill, experience,
training, or education may testify thereto in the form of an opinion or otherwise." 
Tex. R. Evid. 702. If it is determined that a police officer does offer specialized
knowledge as to a defendant's performance on a field sobriety test, it is not necessary
that the officer be certified by the State of Texas if the officer is qualified by other
training or experience to administer the test. See Smith v. State, 65 S.W.3d 332, 344
(Tex. App.--Waco 2001, no pet.); Kerr v. State, 921 S.W.2d 498, 502 (Tex.
App.--Fort Worth 1996, no pet.). Police officers regularly employ field sobriety tests
to examine an individual's impairment when the individual is suspected of driving
while intoxicated. See Volk v. United States, 57 F. Supp.2d 888, 895 (N.D. Cal.
1999). The walk-and-turn test is a psychomotor (6) task that tests an individual's ability
to perform multiple tasks simultaneously. See United States v. Horn, 185 F. Supp.2d
530, 558 (D. Md. 2002).

 Appellant first argues that the trial court erred in admitting into evidence
Deputy Griffin's testimony because he was not "certified to administer standardized
field sobriety tests" and he only "received some training while in the Air Force as to
field sobriety tests in general . . . before standardized field sobriety tests came into
effect." 

 Although Deputy Griffin testified that he was not certified to administer the
NHTSA walk-and-turn test, he did state that he was "very familiar" with how to
administer the standardized test through extensive training and years of experience. 
Since 1978, Griffin had administered field sobriety tests. Also, in 1993, he received
his practitioner certification through TCLEOSE, which included dealing "with
intoxicated persons." See Gerron v. State, 119 S.W.3d 371, 376 (Tex. App.--Waco
2003, no pet.) (reasoning that police officer's certification from TCLEOSE was a
factor in determining whether officer was qualified to testify as to field sobriety test);
Kerr, 921 S.W.2d at 502 (same). While working for the Harris County Sheriff's
Office, Griffin noted that he had also received training in administering field sobriety
tests. Moreover, within approximately the last year before his testimony, Griffin had
conducted a Field Training Officer program where he conducted two DWI arrests,
using standardized field sobriety tests. Accordingly, we hold that the trial court's
implied finding that Griffin's lack of certification in administering the standardized
walk-and-turn test did not prevent his testimony as an expert at appellant's trial and
did not constitute an abuse of discretion.

 Appellant next argues that the trial court erred in admitting into evidence
Deputy Griffin's testimony because "he did not follow NHTSA's required protocol,"
which compromised the test's validity. Appellant asserts that Griffin failed to explain
to her that "she was to count the steps out loud while watching her feet," that, "during
the turn, she was to keep her front foot on the line and then turn in the prescribed
manner using the other foot to take several smaller steps to complete the turn," and
that "she was not to stop walking once the test commenced." Appellant also asserts
that Griffin "did not indicate whether her foot was entirely off [of] the line[,] which
is a necessary finding in order to constitute a valid 'clue,'" and that Griffin did not
record where in the test that appellant stepped off of the line. 

 In support of her argument that Deputy Griffin's failure to administer the walk-and-turn test according to the NHTSA guidelines rendered the test inadmissible at
trial, appellant relies upon State v. Schmitt, 101 Ohio St. 3d 79, 2004-Ohio-37, 801
N.E.2d 446 (Ohio 2004), superseded by statute, Ohio Rev. Code Ann. §
4511.19(D)(4)(b) (West Supp. 2007). In Schmitt, the Ohio Supreme Court held that,
because police officers did not conduct the walk-and-turn tests in strict compliance
with the NHTSA guidelines, the trial courts properly refused to allow the tests' results
into evidence against the defendants at separate trials. Id. at 80-82, 801 N.E.2d at
447-49. However, the Ohio Legislature has since provided that officers only need
to administer field sobriety tests in substantial compliance with the NHTSA
guidelines. Ohio Rev. Code Ann. § 4511.19(D)(4)(b). Also, this Court and other
Texas courts of appeals have held that slight variations from the NHTSA guidelines
on administering the horizontal gaze nystagmus ("HGN") field sobriety test do not
render the HGN test inadmissible at trial. Plouff, 192 S.W.3d at 219; McRae, 152
S.W.3d at 743; Compton v. State, 120 S.W.3d 375, 378 (Tex. App.--Texarkana 2003,
pet. ref'd). 

 More importantly, in Schmitt, the court held that, although a field sobriety
test's results may be inadmissible for not strictly conforming with the NHTSA
guidelines, a police officer's testimony regarding his firsthand observation of the
defendant's conduct and appearance is admissible because "such testimony helps
resolve the issue of whether the defendant was driving while intoxicated." 101 Ohio
St. 3d at 83, 801 N.E.2d at 450. The court reasoned that there is "no reason to treat
an officer's testimony regarding the defendant's performance on a nonscientific field
sobriety test any differently from his testimony addressing other indicia of
intoxication, such as slurred speech, bloodshot eyes, and odor of alcohol." Id. 

 The NHTSA guidelines provide, in pertinent part, for police officers to employ
the following procedure in administering the walk-and-turn test:

1. Instructions Stage: Initial Positioning and Verbal Instructions


 For standardization in the performance of this test, have the
suspect assume the heel-to-toe stance by giving the following
verbal instructions, accompanied by demonstrations:



 
 "Place your left foot on the line" (real or imaginary). 
Demonstrate.

 "Place your right foot on the line ahead of the left foot,
with heel of right foot against toe of left foot." 
Demonstrate.

 "Place your arms down at your sides." Demonstrate.

 "Maintain this position until I have completed the
instructions. Do not start to walk until told to do so."

 "Do you understand the instructions so far?" (Make sure
suspect indicates understanding.)[.]

 


2. Demonstrations and Instructions for the Walking Stage


 Explain the test requirements, using the following verbal
instructions, accompanied by demonstrations:



 
 "When I tell you to start, take nine heel-to-toe steps, turn,
and take nine heel-to-toe steps back." (Demonstrate 3
heel-to-toe steps.).

 "When you turn, keep the front foot on the line, and turn by
taking a series of small steps with the other foot, like this." 
(Demonstrate).

 "While you are walking, keep your arms at your sides,
watch your feet at all times, and count your steps out loud."

 "Once you start walking, don't stop until you have
completed the test."

 "Do you understand the instructions?" (Make sure suspect
understands)[.]

 "Begin, and count your first step from the heel-to-toe
position as 'One.'" 

 


Although the NHTSA guidelines provide eight clues for officers to observe while
administering the walk-and-turn test, it also provides that "[i]nability to complete the
[w]alk-and-turn test occurs when the suspect . . . steps off the line three or more
times." The NHTSA guidelines define "steps off the line" as "[t]he suspect steps so
that one foot is entirely off the line." The NHTSA guidelines also provide,

It is necessary to emphasize this validation applies only when:



 
 The tests are administered in the prescribed, standardized
manner[.]

 The standardized clues are used to assess the suspect's
performance[.]

 The standardized criteria are employed to interpret that
performance[.]

 


If any one of the standardized field sobriety test elements is changed, the
validity is compromised.


 Here, Deputy Griffin administered the walk-and-turn test by doing the
following:


 He instructed appellant not to start the test until so instructed.



 He instructed appellant to plant her left foot on an imaginary line.
 He explained to appellant the heel-to-toe steps.
 He instructed appellant to start the heel-to-toe steps by placing her right
foot in front of her left foot.




 He had appellant place her arms at her sides.
 He told appellant to look down while performing the heel-to-toe steps.
 He instructed appellant to take nine heel-to-toe steps forward.
 He instructed appellant to turn around in a series of small steps after
taking nine heel-to-toe steps forward.


 

 

 He instructed appellant to take nine heel-to-toe steps back.


 

 He demonstrated the test for appellant.
 He asked appellant if she understood his instructions. 


 The trial court excluded Deputy Griffin's testimony about appellant's
performance on the one-leg-stand test from the jury's consideration because it
concluded that Griffin did not properly administer and demonstrate the test. In regard
to the walk-and-turn test, the trial court found that Griffin administered the test
"correctly." Although Griffin did not administer the walk-and-turn test verbatim
according to the NHTSA guidelines, in comparing the NHTSA guidelines to Griffin's
administration of the test, he substantially complied with the guidelines. Also, as
Griffin explained to the trial court, as a practical matter, he did not administer the test
with a textbook nor is it a common practice to have the standardized form to record
the results of the test. Moreover, as appellant stepped off of the imaginary line four
times, the NHTSA guidelines "assess" and "interpret" her performance as an
"[i]nability to complete the [w]alk-and-turn test." (7)

 Accordingly, we hold that the trial court did not abuse its discretion in
admitting into evidence Deputy Griffin's testimony about appellant's performance
on the walk-and-turn test. 

 We overrule appellant's sole point of error.




Conclusion

 We affirm the judgment of the trial court. 




 

 Terry Jennings

 Justice


Panel consists of Justices Taft, Jennings, and Bland.


Do not publish. Tex. R. App. P. 47.2(b). 
1. See Tex. Penal Code Ann. § 49.04(a) (Vernon 2003). 
2. The "walk-and-turn" test calls "for the subject to walk a straight line without stepping
off the line." See Koerselman v. State, 802 S.W.2d 797, 798 n.2 (Tex.
App.--Houston [14th Dist.] 1990, no pet.).
3. The "one-leg-stand" test calls "for the subject to hold one foot in the air and count to
thirty." See id. at 798 n.1.
4. See Nat'l Highway Traffic Safety Admin., U.S. Dep't of Transp., DWI
Detection & Standardized Field Sobriety Testing: Student Manual (2006). 

5. Although the NHTSA guidelines are not included in the record, on appeal, we have
the discretion to take judicial notice of facts outside the record. See Emerson v. State,
880 S.W.2d 759, 764-65 (Tex. Crim. App. 1994). Judicial notice "on appeal should
be taken, if at all, 'where necessary to avoid an unjust judgment.'" Watkins v. State,
245 S.W.3d 444, 456 (Tex. Crim. App. 2008) (quoting Steven Goode et. al., Texas
Practice: Guide to the Texas Rules of Evidence § 201.7, at 75 (3d ed. 2002)). 
Here, the trial court and the parties relied upon the NHTSA guidelines in determining
the admissibility of Deputy Griffin's testimony on the walk-and-turn test. 
Accordingly, we take judicial notice of the NHTSA guidelines. Having taken judicial
notice of the NHTSA guidelines, we deny appellant's motion to supplement the
record with the NHTSA guidelines as moot.
6. "Psychomotor" is defined as "of or relating to the origination of movement in
conscious mental activity." The New Oxford American Dictionary 1375 (2001).
7. During the voir dire hearing, Deputy Griffin did not testify to nor was he asked
whether appellant's foot came entirely off of the line.