

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-158-CR

LESA ROCHE HORTON                                    APPELLANT

V.

THE STATE OF TEXAS                                        STATE

------------

FROM COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Lesa Roche Horton appeals her conviction for driving while intoxicated (DWI). In two points, Appellant contends that the trial court erred by failing to suppress evidence of field sobriety tests because the tests did not meet the standard set in *Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App.

---

[1] *See* Tex. R. App. P. 47.4.

2002), and that the trial court impermissibly placed the burden of proof to show that the police wrongfully performed the tests on Appellant. We will affirm.

## II. Factual and Procedural Background

On March 13, 2008, at approximately 9:00 p.m., Amanda Cobb was driving home from work on I-35 when she saw the driver of a van, which was later identified as Appellant's van, driving erratically, swerving, and running other drivers off the road. Cobb called 911 to report the erratic driver. After relaying a description of the van to the 911 dispatcher, Cobb, on the advice of the 911 dispatcher, turned on her car's emergency flashers and began following Appellant's van at a safe distance. Cobb stated that she was driving between 85–90 m.p.h. to keep up with Appellant's van. Cobb followed Appellant for ten to twelve miles until a police officer arrived and stopped Appellant's van. Cobb did not stop to talk with police that night.

Laura Nicole Stephenson, a Denton police officer, received a dispatch call of a reckless driver in a Honda Odyssey van. When Officer Stephenson saw the van, she noticed that it was not maintaining a single lane of traffic and that the van would speed up and then slow down. Officer Stephenson then activated her patrol car's overhead lights and stopped Appellant's van.

When Officer Stephenson approached the van, she noticed that Appellant smelled of alcohol, that she had red and heavy eyes, and that she was fumbling

with her bag. Appellant stated that she was a banker and that she was coming home from work, but later stated that she was on her way home from dinner in Southlake.[2] Appellant told Officer Stephenson that she had three glasses of wine with dinner and that it takes two to three drinks for her to feel the effects of alcohol. Appellant stated that she was not on any medication, that she did not feel drowsy, and that she was not sick.

Officer Stephenson then had Appellant get out of her van to perform the standardized field sobriety tests. During the Horizontal Gaze Nystagmus (HGN) test, Appellant exhibited six out of six possible clues and was not able to follow directions. During the walk-and-turn test, Appellant exhibited five out of eight possible clues. Officer Stephenson stated that two clues means that a person is intoxicated. Finally, during the one-leg-stand, Appellant exhibited three out of four possible clues. Officer Stephenson stated that two clues indicates that a person is intoxicated during this test.

After administering the field sobriety tests, Officer Stephenson then arrested Appellant. Officer Stephenson asked Appellant for a blood or breath test, but Appellant refused both tests. Appellant asked Officer Stephenson if she could take the field sobriety tests again, but Officer Stephenson refused.

[2] At trial, Appellant testified that she stopped in Lake Dallas, not Southlake, and had dinner with her sister on her way home from work.

3

Appellant was charged by information with the offense of DWI. Appellant pleaded not guilty to the charged offense. A jury found Appellant guilty and assessed her punishment at 150 days in jail, probated for eighteen months, and a $700 fine. This appeal followed.

### III. Discussion

In two points, Appellant contends that the trial court abused its discretion by failing to suppress evidence of the field sobriety test results because Officer Stephenson did not administer the tests in accordance with the National Highway and Transportation Safety Administration (NHTSA) manual. Specifically, Appellant argues that because she was fifty pounds or more overweight, the tests should not have been administered. Additionally, Appellant asserts that the trial court wrongfully placed the burden of proof on her to show that the police wrongfully performed the tests because she was fifty pounds or more overweight. Because both of Appellant's points concern whether evidence of the field sobriety test results should have been admitted under the *Kelly* standard, we will address both points together.

A. Rule 702 and *Kelly v. State*

Rule 702 of the Texas Rules of Evidence provides as follows: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified

as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." Tex. R. Evid. 702. It is a trial court's responsibility under rule 702 to determine whether proffered scientific evidence is sufficiently reliable and relevant to assist the jury. *Jackson v. State*, 17 S.W.3d 664, 670 (Tex. Crim. App. 2000). A trial court's ruling on the admissibility of scientific expert testimony is reviewed under an abuse of discretion standard. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).

The proponent of the scientific evidence must demonstrate through clear and convincing evidence that the evidence is in fact reliable. *Id.* The proponent of the evidence must satisfy three criteria to demonstrate reliability: (1) the underlying scientific theory is valid; (2) the technique applying the theory is valid; and (3) the technique was properly applied on the occasion in question. *Kelly*, 824 S.W.2d at 573. Other nonexclusive factors that could affect a trial court's determination of reliability include (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained, (2) the qualifications of the expert testifying, (3) the existence of literature supporting or rejecting the underlying scientific theory and technique, (4) the potential rate of error of the technique, (5) the availability of other experts to test and evaluate the

5

technique, (6) the clarity with which the underlying scientific theory and technique can be explained to the court, and (7) the experience and skill of the person who applied the technique on the occasion in question. *Id.*

B. HGN Test[3]

The Texas Court of Criminal Appeals has held that the HGN test is a scientific test. *Emerson v. State*, 880 S.W.2d 759, 764 (Tex. Crim. App. 1994). The HGN test is based on scientific theory, and the results are admissible under rule 702 when the test is properly administered by a qualified officer. *Id.* at 768–69; *see* Tex. R. Evid. 702; *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Kelly*, 824 S.W.2d at 573. Testimony concerning the HGN test is scientific evidence and subject to the criteria of *Kelly*. *See Emerson,* 880 S.W.2d at 763.

Nystagmus is an involuntary rapid oscillation of the eyes in a horizontal, vertical, or rotary direction. *Id.* at 765. Horizontal gaze nystagmus refers to the inability of the eyes to smoothly follow an object moving horizontally across the field of vision, particularly when the object is held at an angle of forty-five degrees or more to the side. *See Webster v. State*, 26 S.W.3d 717, 719 n.1

---

[3] In her brief, Appellant does not state which field sobriety test result evidence the trial court improperly admitted. Therefore, we will address each of the three field sobriety tests.

(Tex. App.—Waco 2000, pet. ref'd). Consumption of alcohol exaggerates nystagmus to the degree that it can be observed by the naked eye. *Emerson*, 880 S.W.2d at 766. In determining whether a person's performance of the HGN test suggests intoxication, an officer must look for the following clues in each eye: (1) the lack of smooth pursuit, (2) distinct nystagmus at maximum deviation, and (3) the onset of nystagmus prior to 45 degrees. *McRae v. State*, 152 S.W.3d 739, 743 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (op. on reh'g). The *Emerson* court also determined that the HGN testing technique in the NHTSA manual is valid. *See Emerson*, 880 S.W.2d at 768–69. The HGN technique is applied properly when the officer follows the standardized procedures outlined in the DWI Detection Manual published by NHTSA. *See id.*

Appellant's complaint on appeal is that the trial court abused its discretion by allowing the field sobriety test results to be admitted because the State did not show that they were properly administered under *Kelly*. Specifically, Appellant complains that Officer Stephenson did not question Appellant regarding her weight. However, as stated above, the HGN test focuses on the movement of a person's eyes, rather than a person's ability to balance or coordinate. *See Webster*, 26 S.W.3d at 719 n.1. As such, Appellant's weight had no effect on the outcome of the HGN test. *Emerson*, 880 S.W.2d at 766. Accordingly, we hold that the trial court did not abuse its discretion by failing

7

to suppress the HGN test evidence nor did the trial court improperly place the burden of proof on Appellant as to that test.

C. Walk-and-Turn and One-Leg-Stand Tests

Unlike the HGN test, the one-leg-stand and walk-and-turn tests are not grounded in science. Texas courts have held that, because an officer's testimony about a suspect's coordination, balance, and any mental agility problems exhibited during the one-leg-stand and walk-and-turn tests are observations grounded in common knowledge, the officer's testimony based on these observations is considered lay witness opinion testimony under rule 701 and not expert testimony under rule 702. *Plouff v. State*, 192 S.W.3d 213, 223 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (op. on reh'g); *see Emerson*, 880 S.W.2d at 763 (explaining that peace officer need not qualify as expert to express opinion about whether person he observed was intoxicated).

An officer's testimony regarding a suspect's performance in the walk-and-turn and one-leg-stand tests can cross the line from permissible lay opinion to impermissible expert opinion testimony. *See Smith v. State*, 65 S.W.3d 332, 346 (Tex. App.—Waco 2001, no pet.). However, Texas courts have held that an officer who uses terms such as "test," "standardized clues," or "divided attention" when describing the walk-and-turn and one-leg-stand tests is not

testifying as an expert. *See Plouff*, 192 S.W.3d at 224; *McRae*, 152 S.W.3d at 746.

Appellant argues that the trial court abused its discretion by failing to suppress the field sobriety test results because Officer Stephenson did not inquire into Appellant's weight, and therefore, did not properly administer the tests. Appellant argues that the failure to ask how much she weighed at the time of the tests should result in the exclusion of the evidence. Additionally, Appellant argues that the trial court improperly placed the burden of proof on her to show that she was fifty pounds or more overweight and, therefore, that the field sobriety tests were not properly applied.

In her brief, Appellant states that the field sobriety tests are subject to *Kelly*. However, as stated above, the walk-and-turn and one-leg-stand tests are not scientific evidence and therefore not subject to *Kelly* except when an officer's testimony crosses the line from lay testimony to expert testimony. *Smith*, 65 S.W.3d at 346. Here, Appellant does not assert that Officer Stephenson's testimony was impermissible expert opinion testimony, nor does she point to the record as evidence that Officer Stephenson's testimony crossed the line to expert testimony.

Regardless, after reviewing the record, we hold that Officer Stephenson's testimony regarding the walk-and-turn and one-leg-stand tests is lay witness

9

testimony governed by rule 701. *See Plouff*, 192 S.W.3d at 224. Officer Stephenson stated that, during the walk-and-turn test, suspects are to "stand with their left foot down and their right foot, heel to toe, in front of the left one" and to "place their hands at their side and to hold that position while the instructions are being given." She testified that there are eight clues for the walk-and-turn test. Officer Stephenson further stated that, when conducting the tests, she looks to "make sure they maintain their balance while listening to the instructions, that they don't start the test before the instructions are finished being given, [and] that they touch their steps heel to toe." Officer Stephenson continued that she is "looking to see if they step off the line, if they stop while walking to steady themselves, if they raise their hands over six inches for balance, if they turn incorrectly, or if they take an incorrect number of steps." Officer Stephenson testified that Appellant exhibited five out of the eight clues during the test. She further stated that two clues means that the subject is intoxicated.

Additionally, Officer Stephenson stated that the one-leg-stand test is a "divided attention" test. She stated that she has the subject "stand with [his or her] feet together and [his or her] hands at their side." Officer Stephenson said that she has the subject hold that position while she gives them the instructions for the test. She elaborated that the instructions are "to raise

10

either the right or left foot approximately six inches off the ground, point the toe towards the ground, look at your elevated foot, and count aloud: One thousand one, one thousand two, one thousand three, one thousand four, so on until I tell [the person] to stop." She stated that the test lasts approximately thirty seconds. Officer Stephenson testified that she gave Appellant the instructions verbally and also demonstrated how the test was to be performed. Officer Stephenson stated that although Appellant appeared to be a good candidate for the test, Appellant told Officer Stephenson that "her legs were fat."

Officer Stephenson testified that Appellant raised her arms, swayed while balancing, put her foot down during the test, and was unable to count the way Officer Stephenson had instructed. Officer Stephenson stated that Appellant exhibited three out of the four possible clues for the test. She stated that the "decision point" on this test was two clues, so the test indicated that Appellant was intoxicated.

After reviewing the record, we cannot say that Officer Stephenson's testimony crossed the line from lay testimony to expert testimony. *See Plouff*, 192 S.W.3d at 224; *McRae*, 152 S.W.3d at 746. Accordingly, we hold that the trial court did not abuse its discretion by allowing the admission of the field sobriety test results at trial.

11

Additionally, because we hold that Officer Stephenson's testimony was lay witness testimony, and therefore the *Kelly* standard does not apply, we hold that the trial court did not wrongfully place the burden of proof on Appellant to show her weight at the time of her arrest. *See Kelly*, 824 S.W.2d at 573 (stating that the proponent of the scientific evidence must show that the technique was properly applied on the occasion in question).

D.  Harm Analysis

Even assuming the trial court erred by admitting the results of the field sobriety tests, we conclude that Appellant was not harmed by the admission of the evidence.

The erroneous admission of evidence is nonconstitutional error. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Id.* (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex. App.—Fort Worth 1998, pet. ref'd). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001); *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). In making this determination, we review the record as

12

a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

Here, Cobb testified that she was driving home when she saw Appellant's van swerving and moving erratically. She stated that other drivers were having to run off the road to avoid being hit by Appellant's van. She stated that after she called 911, she continued following Appellant until an officer pulled Appellant's van over.

Officer Stephenson testified that she received a dispatch of a reckless driver driving a Honda Odyssey van. When she located the van, Officer Stephenson stated that she noticed that the van was not maintaining a single lane of traffic and that the van would speed up and then slow down. Officer Stephenson then turned on her overhead lights to stop Appellant's van, but Appellant missed the exit and then stopped on the shoulder of the highway. Officer Stephenson stated that when she approached Appellant's van, Appellant smelled of alcohol, her eyes were red and heavy, and Appellant was fumbling with her bag. When Officer Stephenson first questioned Appellant about where she was coming from, Appellant stated that she was on her way home from

13

work. However, Appellant later changed her story and stated that she was coming home from dinner. After getting out of the van, Appellant stated that she had consumed three glasses of wine with dinner and that it takes two to three drinks for her to feel the effects of alcohol. Appellant stated that she was not on any medication, nor was she sick or feeling drowsy.

We conclude that, in the context of the entire case against Appellant, any possible error in admitting the results of the field sobriety tests would not have had a substantial or injurious effect on the jury's verdict and would not have affected Appellant's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard any alleged error. *See* Tex. R. App. P. 44.2(b).

## IV. Conclusion

Having overruled Appellant's two points, we affirm the trial court's judgment.


ANNE GARDNER
JUSTICE

PANEL: GARDNER and MCCOY, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment)

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 31, 2010

14