COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                       NO.  2-09-158-CR

 

 

LESA ROCHE HORTON                                                         APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

         FROM
COUNTY CRIMINAL COURT NO. 4 OF DENTON COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction








Appellant
Lesa Roche Horton appeals her conviction for driving while intoxicated
(DWI).  In two points, Appellant contends
that the trial court erred by failing to suppress evidence of field sobriety
tests because the tests did not meet the standard set in Kelly v. State,
824 S.W.2d 568 (Tex. Crim. App. 2002), and that the trial court impermissibly
placed the burden of proof to show that the police wrongfully performed the
tests on Appellant.  We will affirm.

II. 
Factual and Procedural Background

On March
13, 2008, at approximately 9:00 p.m., Amanda Cobb was driving home from work on
I-35 when she saw the driver of a van, which was later identified as Appellant=s van,
driving erratically, swerving, and running other drivers off the road.  Cobb called 911 to report the erratic
driver.  After relaying a description of
the van to the 911 dispatcher, Cobb, on the advice of the 911 dispatcher,
turned on her car=s emergency flashers and began
following Appellant=s van at a safe distance.  Cobb stated that she was driving between 85B90
m.p.h. to keep up with Appellant=s
van.  Cobb followed Appellant for ten to
twelve miles until a police officer arrived and stopped Appellant=s
van.  Cobb did not stop to talk with
police that night.   

Laura
Nicole Stephenson, a Denton police officer, received a dispatch call of a
reckless driver in a Honda Odyssey van. 
When Officer Stephenson saw the van, she noticed that it was not
maintaining a single lane of traffic and that the van would speed up and then
slow down.  Officer Stephenson then
activated her patrol car=s overhead lights and stopped
Appellant=s van.   








When
Officer Stephenson approached the van, she noticed that Appellant smelled of
alcohol, that she had red and heavy eyes, and that she was fumbling with her
bag.  Appellant stated that she was a
banker and that she was coming home from work, but later stated that she was on
her way home from dinner in Southlake.[2]  Appellant told Officer Stephenson that she
had three glasses of wine with dinner and that it takes two to three drinks for
her to feel the effects of alcohol. 
Appellant stated that she was not on any medication, that she did not
feel drowsy, and that she was not sick.  


Officer
Stephenson then had Appellant get out of her van to perform the standardized field
sobriety tests.  During the Horizontal
Gaze Nystagmus (HGN) test, Appellant exhibited six out of six possible clues
and was not able to follow directions. 
During the walk-and-turn test, Appellant exhibited five out of eight
possible clues.  Officer Stephenson
stated that two clues means that a person is intoxicated.  Finally, during the one-leg-stand, Appellant
exhibited three out of four possible clues. 
Officer Stephenson stated that two clues indicates that a person is
intoxicated during this test.  

After
administering the field sobriety tests, Officer Stephenson then arrested
Appellant.  Officer Stephenson asked
Appellant for a blood or breath test, but Appellant refused both tests.  Appellant asked Officer Stephenson if she
could take the field sobriety tests again, but Officer Stephenson refused. 








Appellant
was charged by information with the offense of DWI.  Appellant pleaded not guilty to the charged
offense.  A jury found Appellant guilty
and assessed her punishment at 150 days in jail, probated for eighteen months,
and a $700 fine.  This appeal followed.

III. 
Discussion

In two
points, Appellant contends that the trial court abused its discretion by
failing to suppress evidence of the field sobriety test results because Officer
Stephenson did not administer the tests in accordance with the National Highway
and Transportation Safety Administration (NHTSA) manual. Specifically,
Appellant argues that because she was fifty pounds or more overweight, the
tests should not have been administered. 
Additionally, Appellant asserts that the trial court wrongfully placed
the burden of proof on her to show that the police wrongfully performed the
tests because she was fifty pounds or more overweight.  Because both of Appellant=s points
concern whether evidence of the field sobriety test results should have been
admitted under the Kelly standard, we will address both points together.


A.  Rule 702 and Kelly v. State








Rule 702
of the Texas Rules of Evidence provides as follows: AIf
scientific, technical, or other specialized knowledge will assist the trier of
fact to understand the evidence or to determine a fact in issue, a witness
qualified as an expert by knowledge, skill, experience, training, or education
may testify thereto in the form of an opinion or otherwise.@  Tex. R. Evid. 702.  It is a trial court=s
responsibility under rule 702 to determine whether proffered scientific
evidence is sufficiently reliable and relevant to assist the jury.  Jackson v. State, 17 S.W.3d 664, 670 (Tex.
Crim. App. 2000).  A trial court=s ruling
on the admissibility of scientific expert testimony is reviewed under an abuse
of discretion standard.  Weatherred v.
State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).








The
proponent of the scientific evidence must demonstrate through clear and
convincing evidence that the evidence is in fact reliable.  Id. 
The proponent of the evidence must satisfy three criteria to
demonstrate reliability:  (1) the
underlying scientific theory is valid; (2) the technique applying the theory is
valid; and (3) the technique was properly applied on the occasion in question. Kelly,
824 S.W.2d at 573.  Other nonexclusive
factors that could affect a trial court=s
determination of reliability include (1) the extent to which the underlying
scientific theory and technique are accepted as valid by the relevant
scientific community, if such a community can be ascertained, (2) the
qualifications of the expert testifying, (3) the existence of literature
supporting or rejecting the underlying scientific theory and technique, (4) the
potential rate of error of the technique, (5) the availability of other experts
to test and evaluate the technique, (6) the clarity with which the underlying
scientific theory and technique can be explained to the court, and (7) the
experience and skill of the person who applied the technique on the occasion in
question.  Id.

B. HGN Test[3]

The
Texas Court of Criminal Appeals has held that the HGN test is a scientific
test.  Emerson v. State, 880
S.W.2d 759, 764 (Tex. Crim. App. 1994). 
The HGN test is based on scientific theory, and the results are
admissible under rule 702 when the test is properly administered by a qualified
officer.  Id. at 768B69; see
Tex. R. Evid. 702; Osbourn v. State, 92 S.W.3d 531, 537 (Tex. Crim.
App. 2002); Kelly, 824 S.W.2d at 573. 
Testimony concerning the HGN test is scientific evidence and subject to
the criteria of Kelly.  See
Emerson, 880 S.W.2d at 763.








Nystagmus
is an involuntary rapid oscillation of the eyes in a horizontal, vertical, or
rotary direction.  Id. at
765.  Horizontal gaze nystagmus refers to
the inability of the eyes to smoothly follow an object moving horizontally
across the field of vision, particularly when the object is held at an angle of
forty‑five degrees or more to the side. 
See Webster v. State, 26 S.W.3d 717, 719 n.1 (Tex. App.CWaco
2000, pet. ref=d).  Consumption of alcohol exaggerates nystagmus
to the degree that it can be observed by the naked eye.  Emerson, 880 S.W.2d at 766.  In determining whether a person's performance
of the HGN test suggests intoxication, an officer must look for the following
clues in each eye: (1) the lack of smooth pursuit, (2) distinct nystagmus at
maximum deviation, and (3) the onset of nystagmus prior to 45 degrees.  McRae v. State, 152 S.W.3d 739, 743 (Tex.
App.CHouston
[1st Dist.] 2004, pet. ref=d) (op.
on reh=g).  The Emerson court also determined that
the HGN testing technique in the NHTSA manual is valid.  See Emerson, 880 S.W.2d at 768B69.  The HGN technique is applied properly when
the officer follows the standardized procedures outlined in the DWI Detection
Manual published by NHTSA.  See id. 








Appellant=s
complaint on appeal is that the trial court abused its discretion by allowing
the field sobriety test results to be admitted because the State did not show that they
were properly administered under Kelly. 
Specifically, Appellant complains that Officer Stephenson did not
question Appellant regarding her weight. 
However, as stated above, the HGN test focuses on the movement of a
person=s eyes, rather
than a person=s ability to balance or coordinate.  See Webster, 26 S.W.3d at 719
n.1.  As such, Appellant=s weight had no
effect on the outcome of the HGN test.  Emerson,
880 S.W.2d at 766.  Accordingly, we hold
that the trial court did not abuse its discretion by failing to suppress the
HGN test evidence nor did the trial court improperly place the burden of proof
on Appellant as to that test.

C.  Walk-and-Turn and One-Leg-Stand Tests

Unlike
the HGN test, the one-leg-stand and walk-and-turn tests are not grounded in
science.  Texas courts have held that,
because an officer=s testimony about a suspect=s
coordination, balance, and any mental agility problems exhibited during the
one-leg-stand and walk-and-turn tests are observations grounded in common
knowledge, the officer=s testimony based on these
observations is considered lay witness opinion testimony under rule 701 and not
expert testimony under rule 702.  Plouff
v. State, 192 S.W.3d 213, 223 (Tex. App.CHouston
[14th Dist.] 2006, no pet.) (op. on reh=g); see
Emerson, 880 S.W.2d at 763 (explaining that peace officer need not
qualify as expert to express opinion about whether person he observed was
intoxicated).








An
officer=s
testimony regarding a suspect=s
performance in the walk-and-turn and one-leg-stand tests can cross the line
from permissible lay opinion to impermissible expert opinion testimony.  See Smith v. State, 65 S.W.3d 332, 346
(Tex. App.CWaco 2001, no pet.).  However, Texas courts have held that an
officer who uses terms such as Atest,@ Astandardized
clues,@ or Adivided
attention@ when describing the
walk-and-turn and one-leg-stand tests is not testifying as an expert.  See Plouff, 192 S.W.3d at 224; McRae,
152 S.W.3d at 746.  

Appellant
argues that the trial court abused its discretion by failing to suppress the
field sobriety test results because Officer Stephenson did not inquire into
Appellant=s weight, and therefore, did not
properly administer the tests.  Appellant
argues that the failure to ask how much she weighed at the time of the tests
should result in the exclusion of the evidence. 
Additionally, Appellant argues that the trial court improperly placed
the burden of proof on her to show that she was fifty pounds or more overweight
and, therefore, that the field sobriety tests were not properly applied.  

In her
brief, Appellant states that the field sobriety tests are subject to Kelly.  However, as stated above, the walk-and-turn
and one-leg-stand tests are not scientific evidence and therefore not subject
to Kelly except when an officer=s
testimony crosses the line from lay testimony to expert testimony.  Smith, 65 S.W.3d at 346.  Here, Appellant does not assert that Officer
Stephenson=s testimony was impermissible
expert opinion testimony, nor does she point to the record as evidence that
Officer Stephenson=s testimony crossed the line to
expert testimony.  








Regardless,
after reviewing the record, we hold that Officer Stephenson=s
testimony regarding the walk-and-turn and one-leg-stand tests is lay witness
testimony governed by rule 701.  See
Plouff, 192 S.W.3d at 224.  Officer
Stephenson stated that, during the walk-and-turn test, suspects are to Astand
with their left foot down and their right foot, heel to toe, in front of the
left one@ and to Aplace
their hands at their side and to hold that position while the instructions are
being given.@ 
She testified that there are eight clues for the walk-and-turn
test.  Officer Stephenson further stated
that, when conducting the tests, she looks to Amake sure
they maintain their balance while listening to the instructions, that they don=t start
the test before the instructions are finished being given, [and] that they
touch their steps heel to toe.@  Officer Stephenson continued that she is Alooking
to see if they step off the line, if they stop while walking to steady
themselves, if they raise their hands over six inches for balance, if they turn
incorrectly, or if they take an incorrect number of steps.@  Officer Stephenson testified that Appellant
exhibited five out of the eight clues during the test.  She further stated that two clues means that
the subject is intoxicated. 








Additionally,
Officer Stephenson stated that the one-leg-stand test is a Adivided
attention@ test.  She stated that she has the subject Astand
with [his or her] feet together and [his or her] hands at their side.@  Officer Stephenson said that she has the
subject hold that position while she gives them the instructions for the test.  She elaborated that the instructions are Ato raise
either the right or left foot approximately six inches off the ground, point
the toe towards the ground, look at your elevated foot, and count aloud: One
thousand one, one thousand two, one thousand three, one thousand four, so on
until I tell [the person] to stop.@  She stated that the test lasts approximately
thirty seconds.  Officer Stephenson
testified that she gave Appellant the instructions verbally and also
demonstrated how the test was to be performed. Officer Stephenson stated that
although Appellant appeared to be a good candidate for the test, Appellant told
Officer Stephenson that Aher legs were fat.@   

Officer
Stephenson testified that Appellant raised her arms, swayed while balancing,
put her foot down during the test, and was unable to count the way Officer
Stephenson had instructed.  Officer
Stephenson stated that Appellant exhibited three out of the four possible clues
for the test.  She stated that the Adecision
point@ on this
test was two clues, so the test indicated that Appellant was intoxicated.   

After
reviewing the record, we cannot say that Officer Stephenson=s
testimony crossed the line from lay testimony to expert testimony.  See Plouff, 192 S.W.3d at 224; McRae,
152 S.W.3d at 746.  Accordingly, we hold
that the trial court did not abuse its discretion by allowing the admission of
the field sobriety test results at trial.








Additionally,
because we hold that Officer Stephenson=s
testimony was lay witness testimony, and therefore the Kelly standard
does not apply, we hold that the trial court did not wrongfully place the
burden of proof on Appellant to show her weight at the time of her arrest.  See Kelly, 824 S.W.2d at 573 (stating
that the proponent of the scientific evidence must show that the technique was
properly applied on the occasion in question). 


D.  Harm Analysis

Even
assuming the trial court erred by admitting the results of the field sobriety
tests, we conclude that Appellant was not harmed by the admission of the
evidence.








The
erroneous admission of evidence is nonconstitutional error.  See King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997).  A substantial
right is affected when the error had a substantial and injurious effect or
influence in determining the jury=s
verdict.  Id. (citing Kotteakos
v. United States, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall
v. State, 961 S.W.2d 639, 643 (Tex. App.CFort
Worth 1998, pet. ref=d).  Conversely, an error does not affect a
substantial right if we have Afair
assurance that the error did not influence the jury, or had but a slight
effect.@  Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001); Johnson v. State, 967 S.W.2d 410, 417 (Tex.
Crim. App. 1998).  In making this
determination, we review the record as a whole, including any testimony or
physical evidence admitted for the jury=s
consideration, the nature of the evidence supporting the verdict, and the
character of the alleged error and how it might be considered in connection
with other evidence in the case.  Motilla v. State, 78 S.W.3d 352, 355 (Tex.
Crim. App. 2002). 

Here,
Cobb testified that she was driving home when she saw Appellant=s van
swerving and moving erratically.  She
stated that other drivers were having to run off the road to avoid being hit by
Appellant=s van.  She stated that after she called 911, she
continued following Appellant until an officer pulled Appellant=s van
over.   








Officer
Stephenson testified that she received a dispatch of a reckless driver driving
a Honda Odyssey van.  When she located
the van, Officer Stephenson stated that she noticed that the van was not
maintaining a single lane of traffic and that the van would speed up and then
slow down.  Officer Stephenson then
turned on her overhead lights to stop Appellant=s van,
but Appellant missed the exit and then stopped on the shoulder of the
highway.  Officer Stephenson stated that
when she approached Appellant=s van,
Appellant smelled of alcohol, her eyes were red and heavy, and Appellant was
fumbling with her bag.  When Officer
Stephenson first questioned Appellant about where she was coming from,
Appellant stated that she was on her way home from work.  However, Appellant later changed her story
and stated that she was coming home from dinner.  After getting out of the van, Appellant
stated that she had consumed three glasses of wine with dinner and that it
takes two to three drinks for her to feel the effects of alcohol.  Appellant stated that she was not on any
medication, nor was she sick or feeling drowsy. 

We
conclude that, in the context of the entire case against Appellant, any
possible error in admitting the results of the field sobriety tests would not
have had a substantial or injurious effect on the jury=s
verdict and would not have affected Appellant=s
substantial rights.  See King, 953
S.W.2d at 271.  Thus, we disregard any
alleged error.  See Tex. R. App.
P. 44.2(b).

IV. 
Conclusion

Having
overruled Appellant=s two points, we affirm the
trial court=s judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL: GARDNER and MCCOY, JJ.; and DIXON W. HOLMAN (Senior Justice,
Retired, Sitting by Assignment)

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  August 31, 2010











[1]See Tex. R. App. P. 47.4.





[2]At trial, Appellant
testified that she stopped in Lake Dallas, not Southlake, and had dinner with
her sister on her way home from work. 





[3]In her brief, Appellant
does not state which field sobriety test result evidence the trial court
improperly admitted.  Therefore, we will
address each of the three field sobriety tests.