**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00266-CR**
_____

**FRANK CARR JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

On Appeal from the County Court at Law No. 5
Montgomery County, Texas
Trial Cause No. 21-356952

**MEMORANDUM OPINION**

A jury convicted Frank Carr Jr. ("Carr") of the Class B misdemeanor offense of driving while intoxicated. Based on the parties' agreement, the trial court suspended Carr's driver's license for ninety-days, sentenced him to serve three days in county jail, and ordered him to pay a $1,200 fine. In two issues, Carr appeals and complains (1) the prosecutor gave the jury an improper definition of "beyond a reasonable doubt" when selecting the jury; and (2) the trial court admitted field sobriety tests into evidence that were inconsistent with the required *Kelly* standard.

1

*See Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992). In support of both complaints, Carr contends the errors violated his constituted constitutional right to a fair trial and for that reason are both subject to harmless error review. We affirm the trial court's judgment for the reasons discussed below.

## I. Background

### A. Voir Dire, Opening Statement and Closing Argument

During voir dire, the prosecutor said that the State had the burden to "prove every element of the offense beyond a reasonable doubt." At one point, the prosecutor showed a puzzle with missing pieces to the venire panel that depicted giraffes, and the following exchange occurred:

> [PROSECUTOR]: I want to talk about burdens. So when we talk about the law in criminal case, there is a certain burden that we have. So our burden in a criminal case is to prove to you some things beyond a reasonable doubt. I'll show you later what those things are, but what I'm trying to prove to you, a driving while intoxicated case, I have to prove each and every element of this offense beyond a reasonable doubt. So to illustrate that, I want to take a look at this picture. Juror Number 1, what do you think that's a picture of?
> PROSPECTIVE JUROR: Looks like some trees and iced tea by it.
> [PROSECUTOR]: Some trees. That's not it. Anybody else have a different answer? Trees? We're sticking with trees? Juror Number 8?
> PROSPECTIVE JUROR: It's a puzzle with a lot of missing pieces.
> [PROSECUTOR]: It's a puzzle with a log of missing pieces. Juror Number 8, what if I put more pieces in there? What is that a picture of?
> PROSPECTIVE JUROR: That would be a couple of giraffes with trees in the background.
> [PROSECUTOR]: A couple of giraffes. Does anyone think that this is not a picture of a couple of giraffes? Okay. That's good. It's not a trick question. That is a picture of two giraffes. I ask you that to illustrate what beyond a reasonable doubt means. It's simply common sense. I'm

only asking you whether or not you believe that I proved the element of each thing in our case for driving while intoxicated.

Carr objected to these remarks, arguing the State misstated the law and was trying to define reasonable doubt.

The trial court overruled the objection and told the jury that there was "no specific legal definition of beyond a reasonable doubt" and that it was up to each juror to determine. The prosecutor then told the panel that "there is no legal definition, but I'm asking that you use your common sense to decide whether or not the elements have been proven." It should be noted that at this point, Carr's attorney did not object to the prosecutor again asking the panel to use their common sense. Elsewhere during voir dire, the prosecutor explained the State had the burden to "prove each and every element of this offense beyond a reasonable doubt[]" and that it had "the entire burden of proof." The trial court also instructed the panel, "The State has the burden [] to prove those elements[.]"

During the State's opening statement, the prosecutor again mentioned the jurors should use their "common sense" in deciding whether or not Carr was guilty beyond a reasonable doubt; and once again, Carr did not object. During the State's closing argument, the prosecutor said "[a]nd we talked about what beyond a reasonable doubt was. It's just that common sense conclusion." Carr also did not object to the prosecutor's suggestion that the jury use common sense to decide if the State met its burden of proof. Furthermore, we note that during closing argument,

3

Carr's attorney urged the jurors to use their "common sense" when making their decision about Carr's guilt.

## B. Trial Evidence

One evening in April 2021, while traveling eastbound on Highway 99, witness Shawn Linton ("Linton") passed a silver Mercedes-Benz parked on the shoulder. Moments later, the same vehicle passed Linton at a high rate of speed. Once the vehicle was in front of Linton, he observed the vehicle swerving and slow its speed to as low as twenty-five miles per hour, well below highway speed. Linton called 9-1-1 and described the vehicle to the dispatcher as a silver Mercedes. Linton told the dispatcher what he observed the Mercedes doing, provided the dispatcher with the plate number for the Mercedes, and said he suspected the driver of the Mercedes might be intoxicated. Linton also advised the dispatcher that the Mercedes took the exit ramp to Highway 59 north. During trial, Linton testified about what he observed that evening, and the recording of the 9-1-1 call that he made was played for the jury.

Texas Department of Public Safety Trooper Andrew Evans ("Evans") also testified at trial. He testified that he received a dispatch regarding Linton's 9-1-1 call describing the vehicle with an "attempt to locate" alert. He staged his vehicle on Highway 59 in an area he thought the vehicle might pass. When the Mercedes passed, he identified it based on the information he received from the police dispatcher based on the 9-1-1 call. Evans pulled in behind the Mercedes and

4

observed it swerving in and out of lanes, traveling slower than highway speeds, and driving with its blinker on. Evans activated his lights and sirens, but the Mercedes did not pull over for the next 2.6 miles. Evans eventually called for assistance, and two other police vehicles stopped with their lights on along the feeder road where the Mercedes exited from Highway 59. The Mercedes stopped in the feeder road's center lane before passing the police vehicles that were parked on the feeder road. The driver of the Mercedes, whom Evans identified as Carr, immediately exited the Mercedes vehicle without waiting for Evans to approach. At trial, Evans described that as "not normal."

When Carr left his vehicle, Evans testified that he saw him "staggering a little bit" and having "to brace himself on the car." According to Evans, he noted these as possible signs of intoxication. He also saw that Carr's eyes were "red, bloodshot, [and] glossy[,]" his breath smelled like alcohol, his speech was slurred, and he looked "disheveled." Carr told Evans that he had taken shots of Patron tequila earlier that evening. Evans suspected that Carr might be intoxicated, so he started conducting the various tests established by the National Highway Traffic and Safety Administration (NHTSA) for testing a person's ability to drive and used in Texas as standardized field sobriety tests (SFSTs).

Evans described what SFSTs look for, and he explained that each test has a different number of "clues" that are suggestive of a person's intoxication, which he

5

looks for when administering these tests. In Carr's case, Evans testified that he administered the horizontal gaze nystagmus (HGN) test and the walk-and-turn test. He explained that Carr showed six of six clues on the HGN test and six of eight clues on the walk-and-turn test.

Evans explained that because Carr was having difficulty maintaining his balance, Evans administered an alternate field sobriety test, the finger count test, rather than a third NHTSA SFST, a test called the one-legged stand. Evans explained that he felt that since Carr was struggling to maintain his balance, the finger count test would be safer for Carr. Regarding Evans's testimony about the finger count test, Carr objected "to any further testimony about tests that haven't been validated properly under the Kelly standard. . .. The tests he's talking about counting backwards and the other non-standard test that he performed after that." Carr further complained, "it's just not part of the Field Sobriety Tests. It doesn't meet standard." The State responded that the opinion Evans drew from the tests he administered were based on the trooper's observations and his training and experience, and Evans had used the finger count test in the past. Carr argued the State was trying to substitute a test in place of one of the SFSTs, and there was no substitute. The trial court allowed Evans to testify about the finger count test. After the trial court ruled, Evans explained to the jury that there were three SFSTs, but police officers could do other field sobriety tests. Evans told the jury that even though he explained to Carr how to

6

do the test and demonstrated to him how the test was done, Carr could not accurately perform the test.

When asked whether he had formed an opinion about Carr's ability to drive, Evans testified, "Based on the totality of the circumstances, the whole stop, and the interaction with him, I believe he was intoxicated while driving." Evans explained that intoxicated means "[t]hat either .08 [blood alcohol content] or that you've lost the mental or physical faculties." Evans testified that Carr "had lost the normal use of his mental and physical faculties." After administering the tests described above, Evans arrested Carr for driving while intoxicated.

Carr consented to a blood draw, and Evans took him to the hospital. However, after they got to the hospital they had to wait too long, and as a result a blood draw was never completed. Carr then consented to a breath test. Yet that test could not be completed because Carr did not blow "hard enough or long enough to make it an adequate sample." Evans testified the absence of a blood or breath test did not change his opinion that Carr was intoxicated. He explained he based this on his observations and "all of the signs of intoxication were still there."

During Evans testimony, his dashcam and body cam videos were introduced into evidence, and after they were admitted, they were played for the jury. The dashcam shows Carr's vehicle swerving and driving slowly on the highway. The video also shows that Carr does not stop after Evans activates his lights and sirens,

and the jury could have reasonably concluded that Carr wasn't aware that a police officer wanted him to pull over and stop. The videos show Evans administering the SFSTs and finger touch test. They also show Carr having difficulty performing the tests. Carr can also be heard admitting to drinking shots and getting "tipsy."

## II. Analysis

### A. Issue One: The prosecutor's comments did not rise to the level of fundamental error that would excuse his failure to object, and Carr failed to preserve error by failing to object each time the prosecutor made similar comments.

In his first issue, Carr contends that during voir dire, the State improperly defined "beyond a reasonable doubt." He also contends that the prosecutor's comments rose to the level of a constitutional error by violating his Due Process rights, which requires harmless error review. The State responds that Carr waived this complaint because (1) the prosecutor's comments did not rise to the level of fundamental error, (2) he failed to object each time the trial court and prosecutor explained reasonable doubt, and (3) the objection he raised in the trial court does not match the argument that he raises in his appeal.

To preserve a complaint for appeal, a party generally must make a timely, specific objection to the alleged error and obtain a ruling. Tex. R. App. P. 33.1(a); *Pena v. State*, 285 S.W.3d 459, 463–64 (Tex. Crim. App. 2009). A party must renew his objection each time the alleged improper statement is made. *See Fuentes v. State*, 991 S.W.2d 267, 273 (Tex. Crim. App. 1999) (holding

8

appellant waived complaint about trial court's explanation of reasonable doubt standard during voir dire when he failed to renew his objection after the trial court repeated its explanation of reasonable doubt). An exception to this preservation of error requirement is when a complaint involves a fundamental constitutional systemic requirement, known under *Marin v. State* as a category-one or category-two complaint. *See Marin v. State*, 851 S.W.2d 275, 278–80 (Tex. Crim. App. 1993), *overruled on other grounds by Cain v. State*, 947 S.W.2d 262 (Tex. Crim. App. 1997); *see also Proenza v. State*, 541 S.W.3d 786, 795–96 (Tex. Crim. App. 2017) (discussing *Marin* in the context of a trial court's statements and explaining "fundamental error" involves category-one and -two *Marin* errors).

Recently, our sister court in Fort Worth held that an appellant must object to preserve his complaint on appeal if the prosecutor misstates the law on the burden of proof during voir dire, and it held that the appellant's failure to do so forfeited the complaint. *See Robinson v. State*, 685 S.W.3d 217, 223–24 (Tex. App.—Fort Worth 2024, no pet.) (rejecting argument that prosecutor's misstatements regarding the burden of proof during voir dire constituted fundamental error that would excuse need to object). The Fort Worth court analogized a prosecutor's statements during voir dire to improper jury argument, which is forfeited if not preserved by objection. *See id.* (quoting *Davis v. State*, No. 05-19-00508-CR, 2020 WL 3396440, at *4–5 (Tex. App.—Dallas June 19, 2020, no pet.) (mem. op., not designated for

publication)). We agree with this approach. Where a prosecutor misstates the law about the burden of proof, the appellant must object to preserve his complaint. *See id.*; *see also Fuentes*, 991 S.W.2d at 273.

In this case, the prosecutor used the "common sense" analogy for a second time during voir dire, during the State's opening statement, and in the State's closing argument; however, Carr failed to object each time the "common sense" analogy occurred. We conclude that by failing to object each time the prosecutor offered the complained of analogy, Carr failed to preserve his complaint for an appeal. *See Fuentes*, 991 S.W.2d at 273; *Robinson*, 685 S.W.3d at 223–24. We overrule issue one.

**B. Issue Two: Carr did not preserve his constitutional complaint related to the finger count field sobriety test evidence, and the trial court did not abuse its discretion by admitting the officer's testimony under Rule 701.**

In issue two Carr complains about the admission of what he argues is a "nonstandard" finger count field sobriety test, which he contends is inconsistent with the *Kelly* standard and based on Trooper Evans' testimony untested under Texas Rule of Evidence 702 as *Kelly* requires. *See Kelly,* 824 S.W.2d at 573. Carr further argues that because admitting Evans' testimony about the finger count test rose to the level of constitutional error, it is subject to harmless error review. The State responds that by failing to object to Evans' testimony about the test, Carr waived his right to complain about its effect on his trial.

10

In the trial court, Carr objected to Evans's testimony about the finger count test because it "doesn't meet standard[,]" and "to any further testimony about tests that haven't been validated properly under the *Kelly* standard." At trial, Carr also argued the State was trying to substitute the finger count test for a SFST, and there was no substitute. Nothing in his objection or argument to the trial court raised a constitutional complaint. Rather, his arguments related to the reliability of the evidence of a "nonstandard" field sobriety test and its failure to comply with the *Kelly* case.

"To preserve error regarding the admission of evidence, a defendant must lodge a timely and specific objection. The purpose of requiring the objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000) (citation omitted); *see also* Tex. R. App. P. 33.1(a). A point of error on appeal must also match the objection made at trial. *Clark v. State*, 365 S.W.3d 333, 339–40 (Tex. Crim. App. 2012) (noting that record did not show the trial court understood appellant's evidentiary objections to be a constitutional due process complaint and due process complaint was forfeited). Consequently, "'[a]n objection stating one legal theory [at trial] may not be used to support a different legal theory on appeal.'" *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995) (quoting *Johnson v. State*, 803 S.W.2d 272, 292 (Tex. Crim. App. 1990))

11

(other citations omitted). To the extent Carr tries to raise a constitutional complaint on appeal regarding the admission of Evans's testimony about the finger count test, we conclude he has failed to preserve that complaint for our review. *See* Tex. R. App. P. 33.1(a); *Martinez*, 22 S.W.3d at 507; *see also Clark*, 365 S.W.3d at 339–40; *Broxton*, 909 S.W.2d at 918.

We now turn to Carr's evidentiary objection that Evans's finger count test testimony was inadmissible under *Kelly* and Rule 702. We review a trial court's ruling regarding the admissibility of expert testimony for an abuse of discretion and will not disturb it if it is within the zone of reasonable disagreement. *See Wolfe v. State*, 509 S.W.3d 325, 335 (Tex. Crim. App. 2017). Texas Rule of Evidence 702 governs the admissibility of expert testimony and provides that "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Tex. R. Evid. 702; *see also Wolfe*, 509 S.W.3d at 335.

Rule 701 governs the admissibility of lay opinion testimony. *See* Tex. R. Evid. 701. "[O]bservations which do not require significant expertise to interpret and which are not based on a scientific theory can be admitted as lay opinions if the requirements of Rule 701 are met." *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002); *Kronenthal v. State*, No. 09-19-00138-CR, 2020 WL 5805545, at

12

*7 (Tex. App. —Beaumont Sept. 30, 2020, no pet.) (mem. op., not designated for publication) (citations omitted); *see also Emerson v. State*, 880 S.W.2d 759, 763 (Tex. Crim. App. 1994) (explaining that a police officer may generally offer lay opinion testimony to prove a defendant's intoxication) (citing *Vaughn v. State*, 493 S.W.2d 524, 525 (Tex. Crim. App. 1972)). When an officer's administration of field sobriety tests is based on observations grounded in common knowledge "that excessive alcohol consumption can cause problems with coordination, balance, and mental agility," the officer's testimony based on these observations is considered lay witness opinion testimony under Rule 701 and not expert testimony under Rule 702. *See Plouff v. State*, 192 S.W.3d 213, 223–24 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (addressing the one-leg-stand and walk-and-turn tests).

The officer's administration of the complained-of finger count test was "grounded in the common knowledge that excessive alcohol consumption can cause problems with coordination, balance, and mental agility[]" to reveal clues or symptoms of impairment. *See id.* at 223–24 (citation omitted); *see also Kronenthal*, 2020 WL 5805545, at *7. Since the officer's testimony about the finger count test did not require scientific expertise to interpret, it was admissible under Rule 701 as lay opinion testimony. *Osbourn*, 92 S.W.3d at 537; *Kronenthal*, 2020 WL 5805545, at *7–8; *see also Emerson*, 880 S.W.2d at 763. The trial court did not abuse its discretion by admitting this evidence. We overrule issue two.

## III. Conclusion

Having overruled Carr's issues, we affirm the trial court's judgment.

AFFIRMED.

W. SCOTT GOLEMON
Chief Justice

Submitted on April 25, 2024
Opinion Delivered May 15, 2024
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.